*Erika López Prater, Ph.D.*

*v.*

*Trustees of the Hamline University of Minnesota*

EXHIBIT 7 TO NOTICE OF REMOVAL

STATE OF MINNESOTA          DISTRICT COURT

COUNTY OF RAMSEY          SECOND JUDICIAL DISTRICT

---

| | |
|---|---|
| Erika López Prater, | Case Type:  Employment |
| Plaintiff, | |
| vs. | **SUMMONS** |
| Trustees of the Hamline University of Minnesota, | |
| Defendant. | Court File No. _____ |

---

**TO: DEFENDANT ABOVE-NAMED:**

1. **YOU ARE BEING SUED**. Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons.  Do not throw these papers away. They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS**.   You must give or mail to the person who signed this summons **a written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

> 1625 Medical Arts Building
> 825 Nicollet Mall
> Minneapolis, MN 55402

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint.  If you do not want to contest the claims stated in the complaint, you do not need to respond.  A default judgment can then be entered against you for the relief requested in the complaint.

1

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: 2-9-2023                 **FABIAN MAY & ANDERSON, PLLP**

                                   */s/ David H. Redden*
                                   David H. Redden, #391496
                                   Nicholas G. B. May, #287106
                                   Adam A. Gillette, #328352
                                   1625 Medical Arts Building
                                   825 Nicollet Mall
                                   Minneapolis, MN 55402
                                   Telephone: (612) 353-3340
                                   Email: dredden@fmalawyers.com
                                             nmay@fmalawyers.com
                                             agillette@fmalawyers.com

                                   **ATTORNEYS FOR PLAINTIFF**
                                   **ERIKA LÓPEZ PRATER**

STATE OF MINNESOTA                                          DISTRICT COURT

COUNTY OF RAMSEY                                   SECOND JUDICIAL DISTRICT

---

Erika López Prater, Ph.D.,                    Case Type:  Employment

       Plaintiff,

vs.                                           **COMPLAINT**
                                              **Jury Trial Demanded**
Trustees of the Hamline University of
Minnesota,

       Defendant.                 Court File No. _____

---

Plaintiff, by her attorneys Fabian May & Anderson, PLLP, brings this action for damages for Defendant's violations of law. Plaintiff states the following as her claims against Defendant:

### PARTIES

1. Plaintiff Erika López Prater, Ph.D. ("López Prater"), resides in Minnesota.

2. Defendant Trustees of the Hamline University of Minnesota ("Hamline") operates the private liberal arts college Hamline University in St. Paul, Minnesota. Hamline is governed by its independent Board of Trustees. Hamline holds itself out as welcoming all religious persuasions, and as being non-sectarian in both its admissions practices and the content of its courses.

### FACTUAL ALLEGATIONS

### I.  HAMLINE HIRES LÓPEZ PRATER AS AN ADJUNCT PROFESSOR TO TEACH WORLD ART.

3. López Prater is an academic with a Master of Arts (2010) and a Doctorate (2019) in Contemporary Art History from the University of Minnesota. López Prater has served as a Visiting Assistant Professor and/or Lecturer for numerous art history classes at multiple colleges in Minnesota and Western Wisconsin, including Macalester College, University of Wisconsin –

Stout, Minneapolis College of Art and Design, University of Wisconsin – River Falls, Century College, and the University of Minnesota. These art history classes included the study of art in various timeframes and in various geographic areas.

4.      On June 28, 2022, Hamline hired López Prater as an Undergraduate Adjunct in its College of Liberal Arts for the fall 2022 term. López Prater was assigned to teach the fall 2022 class ARTH1100 – World Art, a four-credit course examining the importance of art as a cultural expression across time and from a global perspective. Goals for the class included gaining a broader understanding and appreciation of intellectual and cultural activity, and developing knowledge and understanding of diverse perspectives, global awareness, and other cultures. The class challenged students to analyze the style, subject, and patronage of works of art, and explore art's relationship to religion, ideology, society and economy, political change, gender roles, and the interaction of cultures.

## II.      LÓPEZ PRATER INVITES STUDENTS TO NOTIFY HER OF ANY RELIGIOUS OBJECTIONS TO CLASS CONTENT, INCLUDING DEPICTIONS OF RELIGIOUS FIGURES SUCH AS THE PROPHET MUHAMMAD. NONE OF THEM DO.

5.      Undergraduate courses on world art regularly include the viewing, study, and discussion of art containing images of various religious personages and iconography, including images of Christ, the Buddha, the Prophet Muhammad, and other religious figures. Throughout history, adherents to various religions, or sects within those religions, have taken exception to creating or viewing these and other images. Though not Muslim herself, López Prater knew, for example, that some Muslims—though not all—object to the creation or viewing of art containing images of the Buddha or the Prophet Muhammad.

6.      Because the class would, by its very nature, include discussion of religious traditions and displays of religious art, López Prater stated the following in her course syllabus:

I aim to affirm students of all religious observances and beliefs in the content of the course. Additionally, this course will introduce students to several religious traditions and the visual cultures they have produced historically. This includes showing and discussing both representational and non-representational depictions of holy figures (for example, the Prophet Muhammad, Jesus Christ, and the Buddha). If you have any questions or concerns about either missing class for a religious observance or the visual content that will be presented, please do not hesitate to contact me.

Students who anticipate religious observance may affect their class attendance or participation must:

- Inform the instructor in writing prior to the anticipated absences(s) preferably at the beginning of the course.
- Meet with the instructor to arrange a plan to complete the student's academic responsibilities of the course.

7.      López Prater shared the syllabus with her supervisor Allison Baker ("Baker"), department chair of Hamline's Art and Digital Media Department, before finalizing it. After receiving and reviewing the syllabus, Baker did not make any changes to López Prater's statement in the syllabus and did not express any concern about López Prater displaying depictions of the Prophet Muhammad.

8.      López Prater also submitted the syllabus to Hamline. Hamline made no changes to López Prater's statement and did not express any concern about López Prater displaying depictions of the Prophet Muhammad as part of the class.  Hamline did not inform López Prater that displaying images of the Prophet Muhammad as part of the class was improper in any way.

9.      After providing the syllabus to Baker and Hamline, López Prater distributed the syllabus to students the first day of class. While providing the syllabus, López Prater instructed the students to refer to the syllabus to understand course content and expectations. López Prater also went over the syllabus thoroughly in class. López Prater also uploaded the syllabus to the course website so the students could access it at any time. López Prater brought extra copies of the

3

syllabus to future classes to hand to students who enrolled in the course after the first day and, again, instructed them to review it.

10.     Students knew or should have known that images of the Prophet Muhammad would be shown during the class for educational reasons. Students also knew or should have known that they could avoid viewing those images if they so desired.

11.     Students further knew or should have known that if their religious observance might affect their participation in class, López Prater wished to be notified in advance. Students had ample opportunity to raise any concerns with López Prater about religious imagery that would be shown in class. None did.

## III.   HAMLINE OFFERS LÓPEZ PRATER AN OPPORTUNITY TO TEACH A SPRING SEMESTER CLASS.

12.     On September 21, 2022, Baker emailed López Prater and asked if López Prater was interested in teaching a contemporary art class in the spring. López Prater replied in the affirmative. Baker responded that "[m]y students in your classes have said nothing but wonderful things so we would really love to have you back in the Spring!"

13.     Baker and López Prater thereafter discussed the schedule for the spring contemporary art class, and the class was subsequently listed by Hamline as a course offering in the spring semester.

## IV.   DESPITE BEING WARNED IN THE CLASS SYLLABUS AND VERBALLY ON THE DAY OF CLASS THAT AN IMAGE OF THE PROPHET MUHAMMAD WOULD BE SHOWN, A STUDENT FAILS TO EXCUSE HERSELF, VOLUNTARILY VIEWS THE IMAGE, AND THEN COMPLAINS.

14.     During an online class on October 6, 2022, as part of a unit on Islamic Art, López Prater displayed the painting *The Prophet Muhammad Receiving Revelation from the Angel Gabriel*. The painting dates to the year 1307 and is part of the Ilkhanid manuscript *Jami' al-*

4

*tawarikh* ("Compendium of Histories"), made by Rashid-al-Din Hamadani (a Muslim) in Tabriz, Iran. This artwork was commissioned by a Sunni Muslim King in Iran. It is undisputed that the painting was made by a Muslim for Muslims. The painting is part of a cycle of illustrations narrating and commemorating the Prophet Muhammad's life. The painting is considered by art historians to be a global artistic masterpiece. It is undisputed that the painting was made with great reverence for the Prophet Muhammad and Islam and could never be accurately labeled "Islamophobic."

15.     In the same class, López Prater displayed the painting, *Muhammad, shown with a veiled face and halo, at Mount Hira*. This painting is a 16th century depiction of the Siyer-I Nebi, a Turkish epic about the life of the Prophet Muhammad. The painting shows the Prophet Muhammad with a full-body veil with only his hands showing. There is no dispute that this painting was made with great reverence for the Prophet Muhammad and cannot be accurately labeled "Islamophobic."

16.     López Prater showed the paintings for a plainly educational purpose: to discuss the varied historical ways in which the art of Islam has chosen to represent holy personages, and the broader phenomena within Abrahamic traditions of a contested and inconsistent relationship to depicting the divine. Professors of art history across the world, including Muslim professors, value and show these paintings and other similar images of the Prophet Muhammad in their classes, including in educational spaces within Muslim-majority countries. The paintings López Prater showed are considered canonical by professors of Islamic art, on par with canonical works of art from Western artists such as Leonardo da Vinci's *The Last Supper* and Michelangelo's Sistine Chapel ceiling. *See, e.g.*, Christiane Gruber, *Islamic paintings of the Prophet Muhammad are an important piece of history – here's why art historians teach them*, The Conversation, Jan. 9, 2023,

5

at   https://theconversation.com/islamic-paintings-of-the-prophet-muhammad-are-an-important-piece-of-history-heres-why-art-historians-teach-them-197277.

17.    López Prater displayed both paintings in several classes she had taught at other institutions. These paintings and other images of the Prophet Muhammad are displayed in museums across the world and are included in many textbooks about art history or history in general. In addition to the paintings' artistic merit, they are historically, artistically, religiously, socially, and—most importantly—educationally significant.

18.    Before advancing to the presentation slides containing the images, López Prater notified students that she was about to show representational images of the Prophet Muhammad. López Prater also explained the paintings' educational and artistic significance. Students viewing the online class had ample warning about the paintings. Students viewing the online class also had ample opportunity to turn away from their computer screens, turn their screens away from them, turn off their screens, or even leave their rooms before the López Prater advanced to the slides containing the images. Then, after advancing to the slides containing the images, López Prater provided verbal descriptions of the images and those that followed so students who chose not to look at them would know when she had moved on. During class, neither López Prater, nor any student in the class, made any inappropriate, rude, or discriminatory statements about the paintings or Islam.

19.    Despite being warned about the depictions of the Prophet Muhammad in the syllabus and on the day of class, and despite having ample opportunity to not view the paintings, a Muslim student reportedly viewed the paintings and was reportedly offended by them.

20.    As the October 6 class ended, the Muslim student, Aram Wedatalla ("Wedatalla"), who is the president of Hamline's Muslim Student Association, stayed on the video meeting after

the other students left and expressed outrage to López Prater that images of the Prophet Muhammad were displayed. López Prater explained the educational purpose for displaying the images. Wedatalla was unreceptive to López Prater's explanation.

21.     During their conversation, Wedatalla did not suggest that López Prater had surprised students by showing the paintings. Instead, Wedatalla was enraged that López Prater showed the images at all, to anyone. By her statements and actions, Wedatalla wanted to impose her specific religious views on López Prater, non-Muslim students, and Muslim students who did not object to images for the Prophet Muhammad—a privilege granted to no other religion or religious belief at Hamline.

22.     After the conversation ended, López Prater emailed Baker to explain what happened in class. López Prater also alerted Baker that Wedatalla might contact Baker. Baker responded via email, "I'm sorry that happened and it sounded like you did everything right. I believe in academic freedom so you have my support but thank you for the heads up."

V.      **WEDATALLA REFUSES TO BE MOLLIFIED.**

23.     On October 7, 2022, Baker notified López Prater that Wedatalla had complained to Marcela Kostihova ("Kostihova"), Dean of Hamline's College of Liberal Arts. Baker told López Prater that sending Wedatalla an email apologizing for making her feel uncomfortable would be a good idea, but not to backpedal on López Prater's right to academic freedom under Hamline policy.

24.     López Prater drafted an email and provided it to Baker for review. After receiving Baker's suggested edits, López Prater sent the email apology to Wedatalla on October 8, 2022. In the email, López Prater apologized that the images made Wedatalla uncomfortable. López Prater also told Wedatalla that López Prater did not intend to make anyone upset or to disrespect them. López Prater pointed out that she had given students ample time to choose their level of

engagement, including turning off the video on their computers or walking away. López Prater again explained the educational reasons for displaying the images. López Prater highlighted that they were shown for purposes of demonstrating the artistic diversity within Islam itself. López Prater further wrote:

> I do hope we can both agree that it is important to teach diversity, and by definition, diversity involves bringing contradicting, uncomfortable, and coexisting truths into conversation with each other.

25.     Wedatalla did not respond to López Prater's email, but reportedly shared López Prater's email with others in furtherance of her campaign to impose her religious beliefs and a discriminatory ban on representations of the Prophet Muhammad at Hamline.

## VI.   HAMLINE RENEGES ON ITS OFFER TO RENEW LÓPEZ PRATER'S CONTRACT FOR THE SPRING SEMESTER.

26.     On or about October 10, 2022, López Prater had two discussions with Kostihova. During the first discussion, Kostihova told López Prater that it was not a good idea for her to have shown images of the Prophet Muhammad. Kostihova stated that a Muslim person had described López Prater's actions as "shitting on Islam," and said the closest analogy she could come up with was using the "n word" in class. Kostihova reported that there had a been a large outcry within the Muslim Student Association as well as Muslim faculty and staff, and that Muslim staff were threatening to resign. Kostihova recommended that López Prater apologize in class. López Prater then explained to Kostihova what had happened, why the images were displayed, and the steps López Prater took to accommodate Muslim students who did not wish to see the images.

27.     In their second conversation, López Prater expressed concern to Kostihova about the issue getting out of hand and the damage it may cause to her career. López Prater explained that excluding these Muslim paintings of the Prophet Muhammad would be discriminatory, in that it would privilege the religious views of Muslims who forbid depictions of the Prophet Muhammad

8

over the historical record and people of other religious views, including Muslims, who do not hold

that such images are forbidden.

28.     On October 11, 2022, in an effort toward reconciliation, López Prater apologized

to her class and asked the students if they would like to discuss the matter further. She was met

with silence. She therefore told the students that if they were not comfortable discussing it during

class, she was open to continuing the conversation when they wished. None did.

29.     Despite the multiple apologies, on or about October 24, 2022, Baker notified López

Prater that the class López Prater had been scheduled to teach during the spring semester was being

cancelled and that López Prater's contract would not be renewed. Baker wrote:

> We have deeply appreciated the breadth of knowledge you have brought to Hamline
> this semester but as a department we need to make a spring semester change and
> will no longer be able to offer the contemporary art history class online as we had
> previously discussed.

30.     The next day, López Prater responded to Baker's email, writing, "I imagine that

this need to change plans next semester is related to the events that stemmed from my class a few

weeks ago." Baker never responded or attempted to disabuse López Prater of her conclusion.

## VII.   HAMLINE ADOPTS AND ENFORCES WEDATALLA'S RELIGIOUS BELIEFS WHILE ASSISTING AND APPROVING IN THE DEFAMATION OF LÓPEZ PRATER.

31.     López Prater was prepared to finish out her World Art course and leave Hamline

quietly. Hamline and Everett had other ideas.

### A.     *Hamline Publicly Defames López Prater to the Entire Campus.*

32.     Instead of recognizing that López Prater had displayed the images of the Prophet

Muhammad for a proper academic purpose, Hamline decided to impose Wedatalla's interpretation

of Islam on all Hamline employees and students. Hamline designated its Associate Vice President

9

of Inclusive Excellence, David Everett, Ph. D. ("Everett"), as the person to communicate

Hamline's imposition of religious beliefs.

33.     On or about November 7, 2022, Everett engaged in libel on Hamline's behalf,

publicly defaming López Prater via email to all Hamline employees and students. The email, sent

in the course and scope of Everett's employment with Hamline, states in relevant part:

> Several weeks ago, Hamline administration was made aware of an incident that occurred
> in an online class. <u>Certain actions taken in that class were undeniably inconsiderate,
> disrespectful and Islamophobic.</u> While the intent behind those actions may not have been
> to cause harm, it came at the expense of Hamline's Muslim community members. While
> much work has been done to address the issue in question since it occurred, <u>the act itself
> was unacceptable.</u>
>
> * * *
>
> I want to make clear: isolated incidents such as we have seen define neither Hamline nor
> its ethos. They clearly do not meet community standards or expectations for behavior. We
> will utilize all means at our disposal, up to and including the conduct process, to ensure the
> emotional health, security and well-being of all members of our community.

(Emphasis added.)

34.     At the time his November 7 email was sent, Everett and Hamline knew and

recklessly disregarded the following facts: a) the images López Prater displayed were not created

out of any prejudice toward Islam or Muslims; b) López Prater displayed the images for a proper

educational purpose and within a proper artistic and historical context; c) López Prater did not

display the paintings out of any prejudice toward Islam or Muslims; d) López Prater provided the

students ample warning that the paintings would be shown, while explaining the educational

purpose for doing so; and e) showing these images plainly fell within López Prater's right to

academic freedom, as set forth in Section 3.1.2 of Hamline's Faculty Handbook.

35.     Indeed, contrary to Everett's false assertions in his email, both the images and

López Prater's conduct in showing them were undeniably not "Islamophobic." Hamline cannot

point to any serious academic work suggesting the paintings or López Prater's display of them in class were "Islamophobic." Multiple Muslim scholars and Muslim advocacy organizations have since publicly stated what was always obvious: neither the paintings nor López Prater's conduct were "Islamophobic."

36.     Everett's statement on behalf of Hamline that López Prater's conduct during the October 6 class was "undeniably inconsiderate, disrespectful and Islamophobic" is thus false and defamatory.

37.     While Everett's email did not name López Prater, it was obvious from recent events that López Prater was the target of Everett's libelous email. Anyone with a little time and interest could easily discover that Everett was referring to López Prater.

38.     López Prater, who saw the email and knew it referred to her, suffered immediate, severe, and lasting emotional distress, including various physical manifestations of that distress. López Prater also experienced intense anger that Everett, who had never met or spoken with her, would speak about her in those terms in an email to every Hamline employee.

39.     The defamatory elements of Everett's email have since been published far and wide across the world and tied specifically to López Prater.

**B.     Hamline Makes López Prater a Pariah and Quashes Dissent About Its Conduct.**

40.     On or about November 11, 2022, Kostihova informed López Prater that Hamline's student newspaper, *The Oracle*, was interviewing people about the events in López Prater's October 6 class and intended to publish an article about it. Kostihova told López Prater that *The Oracle* intended to omit her name. Given that López Prater was the only art historian on campus teaching the only art history class that semester, it would be clear to anyone who read the article that she was the professor at the center of the story.

11

41.     The next day, López Prater learned that Hamline instructed its faculty members to not discuss the matter or involve themselves in it. López Prater noticed that the faculty members in her department stopped reaching out to her and seemed to be avoiding her.

42.     On November 18, 2022, *The Oracle* published a staff editorial, including on its public website, entitled "Incidents of hate and discrimination." *See* https://hamlineoracle.com/10652/opinion/staff-ed-incidents-of-hate-and-discrimination/. The student writers parroted the defamatory assertion in Everett's November 7 email that López Prater's conduct was "Islamophobic," and equated López Prater's conduct with a recent "act of homophobia." Further parroting Hamline, the editorial declared that López Prater's conduct had "harmed and traumatized" individuals in the Islamic community, notwithstanding the obvious lack of any physical injury or conduct by López Prater that would reasonably give rise to any lasting shock.

43.     Later that day, López Prater sent an email to Kostihova and Baker calling out Everett's email as defamatory and recounting why the paintings were shown and the efforts made to be respectful to any Muslim students who may not want to see them. López Prater decried the lack of any due process and noted that news of the events in her class were being disseminated in a way that denied her any recourse to defend herself.

44.     López Prater further asked in her email to Baker and Kostihova that *The Oracle* not run its intended article, and wrote:

> This situation has gotten out of control. False, defamatory statements and innuendo have been directed against me and they must stop. I have been given no opportunity to refute these public allegations of Islamophobia. Additionally, a future class has been stripped from me, faculty have been advised not to speak with me about the incident, and the general attitude toward me on campus has become toxic.
>
> * * *
>
> Although I feel that I have been dealt with and impugned unjustly, my intention has always been and remains to be ameliorative and conciliatory. I want to be

12

constructive rather than inflammatory. However, I simultaneously recognize vividly that these ongoing events could dramatically impact my career . . . .

45.     López Prater's pleas fell on deaf ears. On December 6, 2022, *The Oracle* published an article, including on its public website, about the events in López Prater's October 6th class, entitled "Who Belongs?" *See* https://hamlineoracle.com/10750/news/who-belongs/.

46.     The article quoted and rebroadcast Everett's knowingly false and defamatory statement that López Prater's conduct was "undeniably inconsiderate, disrespectful and Islamophobic."

47.     The article also reported the defamatory statement of Patti Kersten ("Kersten"), Hamline's Dean of Students, that López Prater's conduct was "an act of intolerance."

48.     Nur Mood ("Mood"), Assistant Director of Social Justice Programs and Strategic Relations, was quoted saying that showing the historical Muslim paintings was "something that in a million years, I never expected . . . would happen here at Hamline."

49.     Everett told *The Oracle*, "In lieu [sic] of this incident, it was decided it was best that this faculty member was no longer part of the Hamline community."

50.     At no point did Everett, Mood, or Kersten talk to López Prater about the class, the paintings, or the events giving rise to Wedatalla's complaint.

51.     While the article did not name López Prater, there was no mystery as to her identity. López Prater was the only art historian at Hamline teaching the only art history class offered by Hamline. Anyone in the world with time and interest could easily determine López Prater's identity. For example, in an article dated January 5, 2023, a columnist for *The American Spectator* magazine identified López Prater as the professor at issue simply by reviewing Hamline's publicly available undergraduate course listings for fall 2022. *See* Bruce Bawer, *Woke College Fires Adjunct Art Instructor for Showing Illustrations of Muhammad*, The American Spectator, Jan. 5,

13

2023, at https://spectator.org/woke-college-fires-adjunct-art-instructor-for-showing-illustrations-of-muhammed/.

52.     When *The Oracle's* December 6 article was published, López Prater was still teaching her class and finishing out the semester. The disclosure that López Prater was being cast out from the "Hamline community" because she showed historical paintings of the Prophet Muhammad during her October 6th unit on Islamic art contributed significantly to López Prater's feelings of isolation, embarrassment, lack of support, humiliation, and extreme emotional distress.

53.     The same day it ran the "Who Belongs?" article, *The Oracle* also published a letter to the editor from Hamline Professor and Chair of the Department of Religion, Mark Berkson, Ph.D. ("Berkson"), entitled "Letter to the Editor on Islamophobia Accusations." *See* https://hamlineoracle.com/10740/opinion/commetary-the-debate-over-representations-of-muhammad/. Berkson's letter defended López Prater, providing a reasoned counterpoint to the discriminatory and defamatory invective perpetrated by Hamline. Berkson's letter—unlike any Hamline communications to date—accurately described events in López Prater's October 6th class, explained the pedagogical value of the paintings shown, refuted the administration's knowingly false assertions that showing an image of the Prophet Muhammad is categorically "Islamophobic" and "an act of intolerance," and set out the disturbing implications of banning such images from the classroom.

54.     Hamline contacted Berkson and told him he should not have submitted his letter. Shortly after publishing the letter, *The Oracle* removed the letter from *The Oracle's* website. In response to a growing national outcry over its actions, *The Oracle* later published a staff editorial on December 25, 2022, contending that Berkson's letter was removed from its website because it had somehow caused "harm," and because *The Oracle* "will not participate in conversations where

14

a person must defend their lived experience and trauma as topics of discussion or debate." *Staff ed: Journalism, minimizing harm and trauma*, The Oracle, Dec. 25, 2022, at https://hamlineoracle.com/10776/opinion/staff-ed-journalism-minimizing-harm-and-trauma/.

### C.     *The December 8, 2022 "Community Conversation" About Islamophobia.*

55.     On December 8, 2022, Everett hosted an in-person "Community Conversation" on Hamline's campus in which several defamatory statements were made against López Prater by Jaylani Hussein ("Hussein"), Executive Director of the Minnesota chapter of the Council on American-Islamic relations ("CAIR-MN").

56.     During the "Community Conversation," Hussein falsely asserted that López Prater showed the images of the Prophet Muhammad for no reason other than to provoke, offend, and hurt Muslim students, and that doing so was "Islamophobic." Hussein also stated that López Prater showed the paintings because she does not value Muslims the same as other minorities.  Hussein made statements to the effect that non-Muslims do not have the right or knowledge to talk about the range of Islamic beliefs, regardless of their education or expertise.

57.     Berkson, who attended the "Community Conversation," respectfully attempted to question Hussein's false and discriminatory premises. When Berkson did so, Baker and Everett placed their hands on his shoulders and told him to stop. Berkson nevertheless spoke up: "When you say 'trust Muslims on Islamophobia,' what does one do when the Islamic community itself is divided on an issue? Because there are many Muslim scholars and experts and art historians who do not believe that this was Islamophobic."

58.     Hussein angrily responded to Berkson, loudly speaking over him in open contempt, and angrily equated showing depictions of the Prophet Muhammad to the crime of pedophilia, as well as Nazism and white supremacy. Hussein also alluded to the possibility of a violent Islamic

15

response, pointing to the 2015 murders at the offices of the *Charlie Hebdo* newspaper in France, where several people were killed in response to the publication of satirical cartoons depicting the Prophet Muhammad. Hussein referred to the images López Prater showed in class, which, again, were reverentially made by Muslims for Muslims, as "racist" and "disgusting," and called for them to be banned from campus.

59.     At no point did Everett or any other Hamline administrator interrupt Hussein, address his allusion to violence, or allow Berkson to finish his questions. Instead, Everett and Hamline demonstrated their support and agreement with Hussein's defamatory statements regarding López Prater and adopted them as their own.

60.     In fact, Everett, in the scope of his employment, subsequently published a video of the "Community Conversation" to every Hamline employee, and possibly, others from his Hamline email address. The video Everett published includes Hussein's statements identified above.

## VIII.   HAMLINE ADMINISTRATION VIOLATES ITS GUARANTEE OF ACADEMIC FREEDOM.

61.     On December 9, 2022, the day after the "Community Conversation," Everett and Hamline President Fayneese Miller, Ph.D. ("Miller), sent an email to all staff in which they falsely implied that López Prater had somehow showed the images of the Prophet Muhammad disrespectfully.

62.     In the email, Everett and Miller asserted that they "do not suggest that some material be stricken from our classrooms and not shared with students." However, two paragraphs later, in a model of Orwellian doublethink, Everett and Miller stated that the historical paintings containing images of the Prophet Muhammad should have been stricken from López Prater's classroom and not shared with students. They wrote:

16

> It is not our intent to place blame; rather, it is our intent to note that in the classroom incident—where an image forbidden for Muslims to look upon was projected on a screen and left for many minutes—<u>respect for the observant Muslim students in that classroom should have superseded academic freedom</u>.

(Emphasis added.)

63.     Everett and Miller's statement that "respect for the observant Muslim students in that classroom should have superseded academic freedom" runs directly counter to Hamline's obligation to afford academic freedom to its faculty.

64.     López Prater's employment at Hamline was subject to the policies set forth in Hamline's Faculty Handbook ("Handbook"), last amended on May 14, 2021. *Available at* https://drive.google.com/file/d/149jcdSaZm4zuJqUQG7PJE2e7YMUj3HJl/view. Section 1.1 of the Handbook states that the policies contained in the Faculty Handbook apply to "all faculty members of Hamline University." Section 4 of the Handbook states that adjunct professors like López Prater are included in the definition of faculty as "persons having appointment for the instruction of students . . . ."

65.     Section 3.1 of the Faculty Handbook pertains to the academic freedom of all Hamline faculty. It states in relevant part:

> 3.1.2   All faculty members are entitled to freedom in the classroom in discussing their subject, but they should be careful not to introduce into their teaching controversial matter which has no relation to their subject.

66.     The paintings López Prater displayed during the October 6 class were plainly relevant to the subject of world art.

67.     Moreover, as López Prater, numerous academics, and many others have pointed out since López Prater's non-renewal, banning images of the Prophet Muhammad based on the Muslim majority view would privilege those forms of Islam who believe the images should not be shown to the detriment of other sects of Islam, and other religions, that do not ban such images.

17

*See, e.g.*, Christiane Gruber, *An Academic Is Fired Over a Medieval Painting of the Prophet Muhammad*, New Lines Magazine, Dec. 22, 2022, at https://newlinesmag.com/argument/academic-is-fired-over-a-medieval-painting-of-the-prophet-muhammad/; Amna Khalid, *Most of All, I am Offended as a Muslim*, The Chronical of Higher Education, Dec. 29, 2022, at https://www.chronicle.com/article/most-of-all-i-am-offended-as-a-muslim.   In   other   words, banning the images from class would be discriminatory.

68.    The actions and statements of Hamline violated the Handbook's provisions related to academic freedom.

## IX.    HAMLINE HIRES A DIFFERENT ADJUNCT TO TEACH A SPRING ART HISTORY COURSE.

69.    Following the decision to not renew López Prater, Hamline hired a different adjunct instructor to teach a spring semester course entitled "Visual Constructions of Gender."

70.    López Prater was qualified to teach the course and had previously taught similar courses on art and gender at other institutions but was not asked to teach the spring course at Hamline.

## CAUSES OF ACTION

## COUNT I:  RELIGIOUS DISCRIMINATION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

71.    By reference hereto, Plaintiff incorporates the paragraphs above.

72.    The Minnesota Human Rights Act ("MHRA") states that it is the public policy of the state of Minnesota "to secure for persons in this state, freedom from discrimination" in employment because of religion. Minn. Stat. §363A.02(a)(1).

73.    In furtherance of Minnesota's public policy, the MHRA provides that it is an unfair employment practice for an employer, because of religion, to refuse to hire a person, Minn. Stat.

18

§ 363A.08, subd. 2(1), or to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment. *Id.* § 363A.08, subd. 2(3).

74.    The MHRA's prohibition against religious discrimination extends to situations where an employee suffers an adverse employment action because the employee does not conform to the employer's religious expectations or preferences.

75.    The MHRA's prohibition against religious discrimination also extends to situations where an employee suffers an adverse employment action because the employee is not of a particular religion or because of a discriminatory customer preference.

76.    Prior to López Prater showing the two paintings in class, Hamline was satisfied with López Prater's job performance. In fact, Hamline had offered López Prater employment with Hamline for the 2023 spring semester.

77.    Hamline, however, had an expectation that López Prater would conform to the specific beliefs of a Muslim sect that believes it is forbidden to portray the image of the Prophet Muhammad. López Prater did not conform to Hamline's expectation and instead showed two world-renowned artistically and historically significant images of the Prophet Muhammad to her art history class.

78.    After learning that the images had been shown, Hamline subjected López Prater to several adverse employment actions, including, but not necessarily limited to, failing to renew her contract for the spring 2023 semester, violating its guarantee of academic freedom, publicly denouncing López Prater as "Islamophobic" and her conduct "an act of intolerance," announcing her non-renewal before the end of fall semester classes, and assisting and/or facilitating further public defamation and humiliation of López Prater.

19

79.     Hamline subjected López Prater to the foregoing adverse actions because she is not Muslim, because she did not conform her conduct to the specific beliefs of a Muslim sect, and because she did not conform her conduct to the religion-based preferences of Hamline that images of the Prophet Muhammad not be shown to any Hamline student.

80.     By its conduct, Hamline violated section 363A.08, subd. 2 of the MHRA.

81.     As a result of Hamline's unlawful conduct, López Prater has suffered, and will suffer, damages, including but not necessarily limited to loss of income, mental anguish, emotional distress, loss of reputation, and other compensatory damages in excess of $50,000.

**COUNT II: REPRISAL IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT**

82.     By reference hereto, Plaintiff incorporates the paragraphs above.

83.     The MHRA provides that it is an unfair discriminatory practice for any individual who participated in the discrimination as an employer, or as an employee or agent thereof, to engage in reprisal against any person who engages in protected conduct under the MHRA. Minn. Stat. § 363A.15.

84.     López Prater engaged in protected conduct under the MHRA by reporting discrimination.

85.     Hamline engaged in reprisal against López Prater because of her protected conduct by, among other things, failing to renew her contract for the spring 2023 semester, violating its guarantee of academic freedom, publicly denouncing López Prater as "Islamophobic" and her conduct "an act of intolerance," announcing her non-renewal before the end of fall semester classes, and assisting and/or facilitating further public defamation and humiliation of López Prater.

86.     By its conduct, Hamline violated section 363A.15 of the MHRA.

87.     As a direct and proximate cause of Hamline's unlawful conduct, López Prater has suffered and will suffer damages, including but not necessarily limited to loss of income, mental anguish, emotional distress, loss of reputation, and other compensatory damages in excess of $50,000.

## COUNT III:  DEFAMATION

88.     By reference hereto, Plaintiff incorporates the paragraphs above.

89.     Hamline made, adopted, and republished false statements about López Prater, including:

a.      Everett's statement in his November 7, 2022 email that López Prater had engaged in conduct that was "undeniability inconsiderate, disrespectful, and Islamophobic";

b.      Kersten's statement to *The Oracle* student newspaper that López Prater's conduct was "an act of intolerance"; and

c.      Hussein's statements at the December 8, 2022 "Community Conversation" that:

   i.      López Prater showed the images of the Prophet Muhammad for no reason other than to provoke, offend, and hurt Muslim students;

   ii.     That López Prater's conduct was "Islamophobic,"

   iii.    That López Prater showed the paintings because she does not value Muslims the same as other minorities; and

   iv.     That showing images of the Prophet Muhammad was comparable to the crime of displaying "pedophilia art," or supporting Nazism and/or white supremacy.

21

90.     The foregoing false statements constitute defamation per se because they were of and concerning López Prater, impugned her professional reputation, and tended to lower her reputation in the estimation of the community. Hamline made, adopted, and republished these false statements in bad faith, with malicious intent, and knowing of their falsity or in reckless disregard of the truth. The defamatory statements were published and republished to Hamline staff, faculty, students, and other third parties, eventually spreading to news outlets and people across the globe.

91.     As a direct and proximate result of Defendant's conduct, López Prater has suffered and continues to suffer damages, including but not necessarily limited to mental anguish, emotional distress, humiliation, embarrassment, loss of reputation, and other damages in excess of $50,000.

**COUNT IV:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

92.     By reference hereto, Plaintiff incorporates the paragraphs above.

93.     Hamline engaged in conduct toward López Prater that was extreme and outrageous, including, but not limited to, intentionally and publicly denouncing López Prater, a professor at an institution of higher learning, as Islamophobic and engaging in an "act of intolerance," maximizing her emotional distress by announcing her termination before her last day of class, and assisting and/or facilitating her further public defamation and humiliation, thereby causing López Prater to experience severe emotional distress and physical manifestations of the same.

94.     As a direct and proximate result of Hamline's intentional infliction of emotional distress, López Prater has sustained damages in excess of $50,000.

**COUNT V:  VIOLATION OF THE MINNESOTA WHISTLEBLOWER ACT**

95.     By reference hereto, Plaintiff incorporates the paragraphs above.

96.     The Minnesota Whistleblower Act ("MWA") provides in relevant part:

An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) the employee, or a person acting on behalf of an employee, in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official . . . .

Minn. Stat. § 181.932, subd. 1.

97.     López Prater engaged in protected conduct under the MWA, including but not limited to when she reported that she had been defamed.

98.     Hamline violated the MWA by, among other things, failing to follow and apply its policies on academic freedom to López Prater, defaming López Prater, and failing to renew López Prater's contract for the spring 2023 term, because of her protected conduct.

99.     As a direct and proximate cause of Hamline's unlawful conduct, López Prater has suffered and will suffer damages, including but not necessarily limited to loss of past and future income, emotional distress, and other damages in an amount in excess of $50,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erika López Prater prays for a judgment against Defendant Trustees of the Hamline University of Minnesota providing the following relief:

A. All damages available for Hamline's violations of the Minnesota Human Rights Act, including punitive damages;

B. All damages for Hamline's defamation of Plaintiff;

C. All damages for Hamline's intentional infliction of emotional distress on Plaintiff;

D. All damages for Hamline's violations of the Minnesota Whistleblower Act;

E. Permission to amend her Complaint to seek punitive damages in relation to her tort and Whistleblower Act claims;

F. Plaintiff's costs, disbursements, and attorney's fees; and

23

G.  For such other and further relief as the court deems just and equitable.

Dated: 2-9-2023      **FABIAN MAY & ANDERSON, PLLP**

*/s/ David H. Redden*
David H. Redden, #391496
Nicholas G. B. May, #287106
Adam A. Gillette, #328352
1625 Medical Arts Building
825 Nicollet Mall
Minneapolis, MN 55402
Telephone: (612) 353-3340
Email: dredden@fmalawyers.com
       nmay@fmalawyers.com
       agillette@fmalawyers.com

**ATTORNEYS FOR PLAINTIFF
ERIKA LÓPEZ PRATER**

**ACKNOWLEDGMENT REQUIRED BY
MINN. STAT. § 549.211, SUBD. 2**

The undersigned hereby acknowledges that, pursuant to Minn. Stat. § 549.211, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated: 2-9-2023    */s/ David H. Redden*
David H. Redden, #391496

24