UNTIED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Erika López Prater, Ph.D., | ) | |
| | ) | Court File No. 23-CV-505 (KMM-DJF) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **HAMLINE UNIVERSITY'S** |
| | ) | **MEMORANDUM OF LAW IN** |
| Trustees of the Hamline University of | ) | **SUPPORT OF ITS** |
| Minnesota, | ) | **MOTION TO DISMISS PLAINTIFF'S** |
| | ) | **COMPLAINT** |
| Defendant. | ) | |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 3

FACTS AS ALLEGED IN THE COMPLAINT ................................................................. 4

PROCEDURAL POSTURE .................................................................................................. 8

ARGUMENT .......................................................................................................................... 9

I.      STANDARD OF REVIEW. ........................................................................................ 9

II.     PLAINTIFF'S MHRA CLAIM FOR RELIGIOUS DISCRIMINATION SHOULD
BE DISMISSED FOR FAILURE TO STATE A CLAIM. ............................................. 10

      A.     Plaintiff Fails to Allege Direct Evidence of Religious Discrimination. ............... 12

      B.     Plaintiff Fails to Allege Circumstantial Evidence of Religious
Discrimination. ................................................................................................... 14

            1.     Plaintiff fails to establish the first element of a *prima facie* case of
religious discrimination. .......................................................................... 15

            2.     Plaintiff fails to establish the fourth element of a *prima facie* case of
religious discrimination. .......................................................................... 16

            3.     The MHRA does not otherwise provide a cause of action based upon
the allegations contained in the Complaint. ............................................. 16

III.    PLAINTIFF'S MHRA CLAIM FOR REPRISAL SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM. ............................................................................. 18

IV.    PLAINTIFF'S CLAIM FOR DEFAMATION SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM. ............................................................................. 20

      A.     Plaintiff's Defamation Claim Fails Because Statements of Opinion are
Nonactionable. ................................................................................................... 20

      B.     Privileges Apply to the Statements Ascribed to Hamline University. .................. 23

            1.     Plaintiff is a limited purpose public figure. .............................................. 24

            2.     Qualified privilege attaches to Everett's email sending the
"Community Conversation" video. ........................................................... 26

V.     PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ......... 28

VI.    PLAINTIFF'S CLAIM FOR VIOLATION OF THE MINNESOTA
WHISTLEBLOWER ACT MUST BE DISMISSED FOR FAILURE TO STATE
A CLAIM. ................................................................................................................. 30

CONCLUSION ..................................................................................................................... 35

1057337\312885023.v1

Defendant Trustees of the Hamline University of Minnesota ("Hamline University" or "Defendant") respectfully submits this Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint in its entirety, with prejudice.

## **INTRODUCTION**

The facts underlying this matter have gained significant media attention over the past several months, partly due to Plaintiff's own efforts. While there may be some general public debate about "academic freedom" and a university's right to exercise its own discretion in making personnel decisions, Plaintiff's claims, as presented in the Complaint, must be sufficient to satisfy the applicable <u>legal</u> standards. It is not enough to say that the legal and factual claims alleged are interesting or debatable—they must satisfy legal standards showing that a claim to relief that is plausible on its face. Merely alleging that an adverse employment action touches upon religion is insufficient to state a plausible claim for discrimination under the Minnesota Human Rights Act, and statements of opinion concerning a matter of public discourse do not provide a plausible claim for defamation. As set forth below, Plaintiff's Complaint fails to state a claim upon which relief can be granted and should therefore be dismissed.[1]

---

[1]    Hamline University reserves all defenses on the merits in the event that any part of this Motion to Dismiss is denied.

1057337\312885023.v1

## <u>FACTS AS ALLEGED IN THE COMPLAINT</u>[2]

Plaintiff was hired by Hamline University as an Undergraduate Adjunct Instructor to teach a World Art class for the fall 2022 term. (Compl. ¶ 4.) Plaintiff's employment was subject to the policies set forth in Hamline University's Faculty Handbook. (*Id.* at ¶ 64.) The Faculty Handbook includes a section regarding academic freedom. (*Id.* at ¶ 65.)

Plaintiff knew that some Muslims objected to the creation or viewing of art containing images of the Prophet Muhammad. (Compl. ¶¶ 5, 27.) From the outset of the class, Plaintiff intended to display depictions of the Prophet Muhammad. (*Id.* at ¶ 6.) Plaintiff expected students to inform her if they objected to the display of images of the Prophet Muhammad and if their objection would affect their participation in class. (*Id.* at ¶¶ 10–11.)

On September 21, 2022, Allison Baker ("Baker"), department chair of Hamline University's Art and Digital Media Department, asked Plaintiff if she was interested in teaching a contemporary art class during the spring 2023 term. (Compl. ¶¶ 7, 12.) Plaintiff responded that she was interested. (*Id.* at ¶ 12.) Baker and Plaintiff discussed the schedule for the class, and the class was listed by Hamline University as a course offering for the spring 2023 term. (*Id.* at ¶ 13.)

During an online class on October 6, 2022, Plaintiff displayed two paintings of the Prophet Muhammad. (Compl. ¶¶ 14–15.) Not only did Plaintiff display the paintings of the Prophet Muhammad, but she provided verbal descriptions of the paintings. (*Id.* at ¶ 18.) A

---

[2]     Plaintiff's Complaint will not be restated in its entirety, but rather limited to allegations relevant to Hamline University's Motion to Dismiss.

1057337\312885023.v1

Muslim student viewed the paintings of the Prophet Muhammad and was offended by them. (*Id.* at ¶ 19.) The Muslim student expressed her objection to Plaintiff regarding her display of images of the Prophet Muhammad. (*Id.* at ¶¶ 20–21.)

The Muslim student complained about Plaintiff's display of images of the Prophet Muhammad to Marcela Kostihova ("Kostihova"), Dean of Hamline University's College of Liberal Arts. (Compl. ¶ 23.) During a discussion between Plaintiff and Baker, Baker supported Plaintiff's academic freedom, but it was suggested that Plaintiff might apologize to the Muslim student for making her uncomfortable, and Plaintiff did so. (*Id.* at ¶¶ 23–24.) Kostihova told Plaintiff that it was not a good idea for her to have shown images of the Prophet Muhammad in class; that a Muslim had described Plaintiff's actions as "sh*tting on Islam"; and that the closest analogy she could come up with was saying the "n word" in class. (*Id.* at ¶ 26.) Kostihova reported to Plaintiff that there was a large outcry within the Muslim Student Association, as well as Muslim faculty and staff, and Muslim staff were threatening to resign. (*Id.*) Kostihova recommended that Plaintiff apologize in class, which she did. (*Id.* at ¶¶ 26, 28.) Plaintiff expressed concern to Kostihova that if these paintings of the Prophet Muhammad were excluded it would have been discriminatory, in that it privileged the religious views of some Muslims over "the historical record and people of other religious views." (*Id.* at ¶ 27.)

On October 24, 2022, Baker notified Plaintiff that the online class they had discussed for the spring 2023 term was no longer able to be offered and Plaintiff's contract would not be renewed. (Compl. ¶ 29.) Following the decision not to renew Plaintiff's

contract, Hamline University hired a different adjunct instructor to teach a course entitled "Visual Constructions of Gender" for the spring 2023 semester. (*Id.* at ¶ 69.)

On November 7, 2022, David Everett, Ph.D. ("Everett"), Hamline University's Associate Vice President of Inclusive Excellence, emailed Hamline University employees and students referencing Plaintiff's display of images of the Prophet Muhammad in class. (Compl. ¶¶ 32–33.) Everett wrote that the actions were "undeniably inconsiderate, disrespectful, and Islamophobic," and "unacceptable." (*Id.* at ¶ 33.) Plaintiff was not identified by name in Everett's email. (*Id.* at 37.) Upon viewing Everett's email, Plaintiff alleges she "suffered immediate, severe, and lasting emotional distress, including various physical manifestations of that distress." (*Id.* at ¶ 38.) Plaintiff emailed Kostihova and Baker objecting to Everett's email as defamatory. (*Id.* at ¶ 43.)

On November 11, 2022, Kostihova informed Plaintiff that *The Oracle*, Hamline University's student newspaper, intended to publish an article about the events in Plaintiff's October 6, 2022 class, but would omit her name. (Compl. ¶ 40.) *The Oracle* published the staff editorial on November 18, 2022 and "parroted" that Plaintiff's actions were Islamophobic and that they "harmed and traumatized" individuals in the Islamic community, and Plaintiff challenged the characterization citing the lack of any physical injury or lasting shock to Muslims as a result of her display of images of the Prophet Muhammad. (*Id.* at ¶ 42.)

On December 6, 2022, *The Oracle* published an article about the events of Plaintiff's October 6, 2022 class and quoted language from Everett's email, as well as a statements from Patti Kersten ("Kersten"), Hamline University's Dean of Students, that Plaintiff's

1057337\312885023.v1

conduct was "an act of intolerance" and from Nur Mood ("Mood"), Assistant Director of Social Justice Programs and Strategic Relations, that Plaintiff's conduct was "something that in a million years, [he] never expected . . . would happen here at Hamline." (Compl. ¶¶ 45–48.) This article did not name Plaintiff. (*Id.* at ¶ 51.)

On December 8, 2022, Everett hosted an in-person "Community Conversation" on Hamline University's campus including Jaylani Hussein ("Hussein"), Executive Director of the Minnesota chapter of the Council on American-Islamic Relations ("CAIR-MN"). (Compl. ¶ 55.) During the "Community Conversation," Hussein, who is not affiliated with Hamline University, opined that Plaintiff displayed images of the Prophet Muhammad for no other reason than to provoke, offend, and hurt Muslim students; that doing so was "Islamophobic"; and that she did not value Muslims the same as other minorities. (*Id.* at ¶ 56.) A Hamline University professor, opposed Hussein's opinions at the "Community Conversation." (*Id.* at ¶¶ 53, 57.) Hussein responded vehemently stating his own opinion disapproving of showing depictions of the Prophet Muhammad. (*Id.* at ¶ 58.) After the "Community Conversation," Everett emailed Hamline University employees and published a video of the "Community Conversation." (*Id.* at ¶ 60.)

In the Complaint, Plaintiff asserts claims against Hamline University for (1) Religious Discrimination in Violation of the Minnesota Human Rights Act (Compl. ¶¶ 71–81), (2) Reprisal in Violation of the Minnesota Human Rights Act (*Id.* at ¶¶ 82–87), (3) Defamation (*Id.* at ¶¶ 88–91), (4) Intentional Infliction of Emotional Distress (*Id.* at ¶¶ 92–94), and (5) Violations of the Minnesota Whistleblower Act (*Id.* at ¶¶ 95–99). Plaintiff's

1057337/312885023.v1

Complaint fails to state claims in regard to all of her causes of action against Hamline University and should be dismissed, with prejudice, as a result.

## PROCEDURAL POSTURE

On January 18, 2023, Plaintiff served and filed a complaint against Hamline University in Ramsey County Circuit Court. That complaint asserted claims against Hamline University for (1) Religious Discrimination in Violation of the Minnesota Human Rights Act, (2) Reprisal in Violation of the Minnesota Human Rights Act, (3) Breach of Contract, (4) Promissory Estoppel, (5) Defamation, (6) Intentional Infliction of Emotional Distress, and (7) Violations of the Minnesota Whistleblower Act. On February 7, 2023, Hamline University removed the action to the Federal District Court for the District of Minnesota because Section 301 of the Labor Management Relations Act ("LMRA") preempted Plaintiff's state court claims. On February 9, 2023, pursuant to Rule 41(a), Plaintiff voluntarily dismissed her complaint against Hamline University.

On February 9, 2023, Plaintiff served the instant Complaint, which is virtually identical to the previously-filed complaint, less her claims for Breach of Contract and Promissory Estoppel. On March 2, 2023, Hamline University again removed the action to the Federal District Court for the District of Minnesota. (Doc. 1.) Hamline University asserted that federal court is the proper jurisdiction and this Court the appropriate venue because Plaintiff was a "Unit Member" subject to the Collective Bargaining Agreement for Certain Undergraduate Adjunct Faculty (the "CBA") between Hamline University and the Service Employees International Union Local 284 (the "Union"). (*Id.*) Accordingly, Plaintiff's claims against Hamline University, and the defenses to those claims, concerning

8

equal employment opportunity and non-discrimination, and related legitimate and non-discriminatory actions, whether Plaintiff was meeting Defendant's legitimate performance expectations, her alleged appointment to teach a spring 2023 course, and her academic freedom necessarily require the Court's interpretation of the CBA governing Plaintiff's employment. (*Id.*) Therefore, Section 301 of the LMRA preempts Plaintiff's state court claims in this regard.

## **ARGUMENT**

### I.   **STANDARD OF REVIEW.**

Federal Rules of Civil Procedure Rule 12(b)(6) requires a complaint to state a "claim upon which relief can be granted." On a motion to dismiss pursuant to Rule 12(b)(6), a court accepts only well-pleaded allegations in the complaint as true. *Leimer v. State Mut. Life Assurance Co.*, 108 F.2d 302, 305 (8th Cir. 1940). Legal conclusions or unsupported conclusory facts should not be considered. *Parkhill v. Minn. Mut. Life Ins. Co.*, 286 F.3d 1051, 1057–58 (8th Cir. 2002).

While typically a complaint need not allege detailed factual allegations, the United States Supreme Court has noted that a plaintiff is still obligated "to provide the 'grounds' of 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true." *Id.* (internal citations

omitted). The complaint, therefore, must describe the claim in sufficient detail to give a defendant notice of what the claim is and the grounds upon which it rests. *Id.*

In the wake of *Twombly*, the Eighth Circuit has reiterated that conclusory averments are no longer permissible to support legal claims. *See, e.g., Abdullah v. Minnesota*, 261 Fed. Appx. 926, 927 (8th Cir. 2008) (citing *Twombly*); *see also Crystal Imp. Corp. v. AVID Identification Sys.*, 582 F. Supp. 2d 1166, 1169 (D. Minn. 2008) ("Thus, a complaint cannot simply 'le[ave] open the possibility that a plaintiff might later establish some "set of undisclosed facts" to support recovery.' Rather, the facts set forth in the complaint must be sufficient to 'nudge[] the[] claims across the line from conceivable to plausible.'") (citing *Twombly*).

Dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery that is likely to be futile. *Triemert v. Washington Cnty.*, No. 13-cv-3094 (MJD/LIB), 2013 U.S. Dist. LEXIS 178294, 2013 WL 6729260, at *2 (D. Minn. Dec. 19, 2013) (citing *Butler v. Balolia*, 736 F.3d 609, 618 (1st Cir. 2013)). For that reason, a plaintiff is not entitled to discovery before a motion to dismiss. *Id.*

Here, Plaintiff fails to plead sufficient facts to state a claim under any of her causes of action. Additionally, Plaintiff cannot amend the Complaint to state a "plausible claim for relief."

## II.     PLAINTIFF'S MHRA CLAIM FOR RELIGIOUS DISCRIMINATION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The Minnesota Human Rights Act ("MHRA") provides that "[i]t is the public policy of this state to secure for persons in this state, freedom from discrimination . . . in

10

employment <u>because of</u> . . . religion . . . ." Minn. Stat. § 363A.02, subd. 1(a)(1) (2022) (emphasis added). Courts construe the MHRA by applying law developed in federal cases arising under Title VII. *Becker v. Jostens, Inc.*, 210 F. Supp. 3d 1110, 1118 (D. Minn. 2016) (quoting *Bahr v. Capella Univ.*, 788 N.W.2d 76, 83 (Minn. 2010)). The term "religion" is defined to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Title VII—and thus by proxy the MHRA—has been interpreted by some courts to protect against requirements of religious conformity and as such protects those who refuse to hold, as well as those who hold, specific religious beliefs. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).

However, as the statute clearly states, it does not follow that merely because a situation involves religious conduct or belief, and an adverse action is taken as a result of that situation, there is liability under Title VII or the MHRA for religious discrimination. *See, e.g., Eilefson v. Park Nicollet Health Servs.*, Court File No. 27-CV-20-14435, 2021 Minn. Dist. LEXIS 11411 (Dec. 14, 2021); *Zaitz v. Minneapolis Downtown Council*, A10-1897, 2011 Minn. App. Unpub. LEXIS 636, 2011 WL 2623416, *6–8 (Minn. Ct. App. 2011); *see also Ennis v. Sonitrol Mgmt. Corp.*, 02-CV-9070 (TPG), 2006 U.S. Dist. LEXIS 2599, *23–25 (S.D.N.Y. Jan. 25, 2006) (compiling cases). For example, a plaintiff may not skirt consequences for deficient performance simply because the deficient performance involved religious conduct or belief. *See id.* As set forth below, Plaintiff has not plead a causal connection to support this claim and cannot provide a plausible claim to relief.

While a plaintiff need not plead a *prima facie* case of discrimination to survive a motion to dismiss, *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016), elements of a

*prima facie* case are "still part of the background against which a plausibility determination should be made." *Cook v. George's, Inc.*, 952 F.3d 935, 939 (8th Cir. 2020). Where a plaintiff alleges merely conclusory allegations without facts that directly or inferentially support the conclusion, the plaintiff's discrimination claim cannot survive a motion to dismiss. *Ertl v. Archer-Daniels-Midland Co.*, Case No. 21-cv-1493, 2022 U.S. Dist. LEXIS 27096, 2022 WL 462812, *6–7 (D. Minn. Feb. 15, 2022).

It is critical that the plaintiff present proof of a discriminatory motive; whether an employer is liable depends on whether the protected trait actually motivated its decision to take the adverse action. *Lewis v. CNA Nat'l Warranty Corp.*, 63 F. Supp. 3d 959, 963 (D. Minn. 2014) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). The plaintiff can show discriminatory motive by direct evidence or by circumstantial evidence under the *McDonnell Douglas* burden-shifting test. *Hanson v. Mental Health Res., Inc.*, 948 F. Supp. 2d 1034, 1047 (D. Minn. 2013) (citing *Hansen*, 813 N.W.2d at 918).

### A.    Plaintiff Fails to Allege Direct Evidence of Religious Discrimination.

Courts have found direct evidence of discriminatory motive where a statement or policy is discriminatory on its face, such as a direct admission that the protected class motivated a decision. *Lewis*, 63 F. Supp. 3d at 963 (quoting *Goins v. West Group*, 635 N.W.2d 717, 722–23 (Minn. 2001)). Plaintiff does not allege any direct evidence that Hamline University knew of her religion and discriminated against Plaintiff because of her religion. Conversely, Plaintiff does not allege any direct evidence that Hamline University engaged in religious discrimination against her <u>because</u> Plaintiff was not a Muslim follower

that prohibits the display of images of the Prophet Muhammad as the motivation for the adverse employment actions Plaintiff alleges. Therefore, Plaintiff has failed to state a claim under the MHRA.

Even if this Court were to consider Plaintiff's allegations as direct evidence, her MHRA religious discrimination claim should still be dismissed. As discussed above, the mere fact that Plaintiff's conduct involved religious content, is not direct evidence that Hamline University's alleged adverse actions were based on religious animus or discrimination against her. *See, e.g., Eilefson*, 2021 Minn. Dist. LEXIS 11411; *Zaitz*, 2011 Minn. App. Unpub. LEXIS 636, *6–8; *see also Ennis*, 2006 U.S. Dist. LEXIS 2599, *23–25.

In *Eilefson*, the plaintiff was terminated after a terminally-ill patient's husband complained about the plaintiff initiating communication about religion with him and stating that the doctors were wrong and God would heal his wife. 2021 Minn. Dist. LEXIS 11411, at *20, 25. The plaintiff brought a religious discrimination claim under the MHRA. *Id.* at *25. The court found that even though the plaintiff's conduct involved the plaintiff's religious beliefs and practices, a religious discrimination claim was not supported because the plaintiff was terminated for the inappropriate conduct. *Id.* at *27–28.

Such is the case here as well. Plaintiff does not allege that Hamline University took the alleged adverse actions against her because *she* did not believe displaying images of the Prophet Muhammad were offensive. Rather, Plaintiff alleges Hamline University took the alleged adverse actions against Plaintiff because she showed images of the Prophet Muhammad—which she acknowledges the many Muslim followers "take[] exception to"

13

and "object to," and certain Muslim individuals took offense to their display. (Compl. ¶¶ 5, 19–21, 26–27, 58.) This is not a distinction without a difference. Plaintiff's Complaint fails to allege—beyond conclusory allegations—that Hamline University took adverse employment actions against her because *she* refused to conform to the religious beliefs of Hamline University. In fact, Plaintiff acknowledges that Baker directed her "not to backpedal" on Plaintiff's decision to display the images under her right to academic freedom. (*Id.* at ¶ 23.)

**B.  Plaintiff Fails to Allege Circumstantial Evidence of Religious Discrimination.**

Plaintiff may also attempt to proceed with her MHRA religious discrimination claim through circumstantial evidence. Under the *McDonnell-Douglas* burden-shifting test, a plaintiff must allege sufficient circumstantial facts that, when taken as true, establish that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the employer assigned a nonmember of the protected class to do the same work. *Lewis*, 63 F. Supp. 3d at 964 (quoting *Hansen*, 813 N.W.2d at 918). When a plaintiff alleges disparate treatment, liability depends on whether the protected trait motivated the employer's decision. *Id.* at 961–62. The plaintiff's protected trait must have "actually played a role in the [employer's decision making] process." *Id.* Plaintiff has at least failed to sufficiently allege the first and fourth elements of a *prima facie* case of religious discrimination.

1.      **Plaintiff fails to establish the first element of a *prima facie* case of religious discrimination.**

Plaintiff fails to establish the first element of a *prima facie* case of religious discrimination. Where a plaintiff fails to allege membership in a protected class, the complaint fails to state a claim for any sort of civil rights or discrimination claim. *Devisme v. Ctr. City Hous. Co.*, No. 22-cv-01472 (ECT/LIB), 2022 U.S. Dist. LEXIS 124307, 2022 WL 2759092, at *8 (D. Minn. July 14, 2022). Plaintiff makes no allegation as to her religious or non-religious beliefs, such that would place her into a protected class. Plaintiff identifies only that she is "not Muslim herself." (Compl. ¶ 5.) Accordingly, Plaintiff fails to satisfy the first element of a *prima facie* case of religious discrimination.

Even if this Court were to find that "not Muslim" may constitute a protected class, Plaintiff's religious discrimination claim fails the first element of the *prima facie* case because she failed to allege Hamline University was aware of her membership in the protected class. "It is difficult to see how an employer can be charged with discrimination on the basis of an employee's religion when [the employer] doesn't know the employee's religion." *Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934 (7th Cir. 2003). To state a claim for religious discrimination, "employees [must have] informed their employers of their religious beliefs prior to the alleged discriminatory action" because, unlike other bases of discrimination claims like race or gender, an "employee's religion . . . is often unknown to the employer." *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 541–42 (E.D. Pa. 2016). Nowhere does Plaintiff allege that she put Hamline University on notice of her membership

15

in a religious protected class, nor does she allege any discrimination based upon her own religious beliefs.

> **2.      Plaintiff fails to establish the fourth element of a *prima facie* case of religious discrimination.**

Plaintiff also fails to establish the fourth element of a *prima facie* case of religious discrimination: that the employer assigned a nonmember of the protected class to do the same work. Plaintiff alleges only that Hamline University hired a different adjunct instructor to teach a spring semester course that she was qualified to teach. (Compl. ¶¶ 69–70.) Plaintiff, however, fails to allege that the different adjunct instructor is a nonmember to her protected class—whatever that may be.

> **3.      The MHRA does not otherwise provide a cause of action based upon the allegations contained in the Complaint.**

It is possible for a plaintiff to allege that he or she was discriminated against because he or she did not conform to the religious beliefs of the employer. *See, e.g., Campos v. City of Blue Springs, Missouri,* 289 F.3d 546 (8th Cir. 2002); *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997). However, what matters in these scenarios is not so much what the plaintiff's own religious belief are, but that the employer believed the plaintiff did not conform with its religious beliefs. *Venters*, 123 F.3d at 972. The plaintiff must show in these cases that her perceived religious shortcomings played a motivating role in the adverse action she suffered. *Id.* (citing 42 U.S.C. § 2000e-2(m)).

In *Campos*, the employee informed her supervisor she observed tenets of Native American spirituality, rather than Christianity. *Id.* at 549. After this discussion, the employee was subjected to months of harassment and criticism by the supervisor because

16

the supervisor wanted a Christian in the employee's position. *Id.* at 549–50. The employee resigned, and a jury found the employer constructively discharged the employee because she did not conform to the supervisor's religious beliefs. *Id.* at 550. The 8th Circuit held that the employee presented sufficient evidence of religious discrimination for not conforming to the employer's religious beliefs. *Id.* at 550–51.

Here, it appears that Plaintiff's theory of religious discrimination is that Hamline University preferred one well-accepted tenant of a religion, Islam—a religion to which neither Plaintiff nor Hamline University subscribes—that it is controversial and offensive to display images of the Prophet Muhammad—over a differing view held by some Muslims that displaying images of the Prophet Muhammad may be acceptable and non-controversial in some circumstances. This allegation does not concern a sincerely held religious belief of Plaintiff and cannot lead to the plausible conclusion that Hamline University discriminated against Plaintiff on the basis of religion because she did not conform to Hamline University's "preferred belief."

At best, Plaintiff alleges that there is debate about the issue by and among members of the *same* religion and that Hamline University was in the wrong for not renewing her contract under the circumstances. However, these allegations do not show that Hamline University was imposing any religious belief upon Plaintiff. Instead, the allegations simply state the debate among practitioners of Islam about whether it is acceptable to display visual depictions of the Prophet Muhammad. Plaintiff's allegations simply cannot support an actionable claim of "religious discrimination." Hamline University's Motion to Dismiss

17

should be granted because Plaintiff fails to state a religious discrimination claim under the MHRA upon which relief can be granted.

## III.   PLAINTIFF'S MHRA CLAIM FOR REPRISAL SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Retaliation claims under Title VII and the MHRA are governed by the same standards. *Becker v. Jostens, Inc.*, 210 F. Supp. 3d 1110, 1118 (D. Minn. 2016) (quoting *Bahr v. Capella Univ.*, 788 N.W.2d 76, 81 (Minn. 2010)). To survive a motion to dismiss, a plaintiff must allege facts that when taken as true establish that (1) the plaintiff engaged in statutorily-protected activity, (2) the plaintiff suffered an adverse action by the defendant, and (3) a causal connection exists between the two. *Lissick v. Andersen Corp.*, 996 F.3d 876, 886 (quoting *Bahr*, 788 N.W.2d at 81). In regard to the first element, the question is whether the plaintiff pleaded opposition to practices by the employer that are "forbidden" under the MHRA, thereby making the plaintiff's conduct "statutorily-protected." *Harrell v. Handi Med. Supply, Inc.*, 920 F.3d 1154, 1157 (8th Cir. 2019).

Further, a plaintiff must plead sufficient facts to show that it was objectively reasonable for the plaintiff to believe that the defendant's actions were forbidden by the MHRA. *Bahr*, 788 N.W.2d at 82. While a plaintiff need not allege an actual violation of the MHRA for her reprisal claim, the plaintiff must allege that he or she had a good-faith, reasonable belief that the employer's actions were prohibited by the MHRA. *Harrell*, 920 F.3d at 1157 (quoting *Bahr*, 788 N.W.2d at 81–82). If the practice is not unlawful under the plain terms of the MHRA, a plaintiff's belief that the practice is unlawful cannot be reasonable. *Bahr*, 788 N.W.2d at 84. A plaintiff cannot merely claim a reasonable belief

1057337\312885023.v1

that the practices he or she opposed were forbidden by the MHRA and thereby avoid scrutiny of the plaintiff's claim. *Id.*

Here, Plaintiff fails to allege facts sufficient to satisfy at least the first and third elements of a MHRA reprisal claim. Plaintiff makes the conclusory allegation that she "engaged in protected conduct under the MHRA by reporting discrimination." (Compl. ¶ 84.) However, the only facts she alleges regarding "reporting discrimination" do not constitute statutorily-protected activity. Plaintiff alleges that she explained to Kostihova that "excluding these Muslim paintings of the Prophet Muhammad would be discriminatory, in that it would privilege the religious views of Muslims who forbid visual depictions of the Prophet Muhammad over the historical record and people of other religious views, including Muslims, who do not hold that such images are forbidden." (*Id.* at ¶ 27.) Plaintiff does not allege that any actions taken by Hamline University were discriminatory, but rather that if *she* had not shown the images of the Prophet Muhammad, it would have been discriminatory. Plaintiff did not object to any discrimination by Hamline University—she simply justified her own actions of displaying the images— despite the fact that she could have chosen to display any number of tens of thousands of works of art, including Islamic art, that would not require her to issue disclaimers before presenting them. Accordingly, Plaintiff has failed to allege she engaged in statutorily-protected activity, and accordingly, fails to allege a *prima facie* case of reprisal under the MHRA. Therefore, Hamline University's Motion to Dismiss her MHRA reprisal claim should be granted.

IV.   **PLAINTIFF'S CLAIM FOR DEFAMATION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

To establish the elements of a defamation claim in Minnesota, a plaintiff must prove that: (1) the statement or communication in question is defamatory, (2) the statement is false, (3) the statement refers to the plaintiff, and (4) the statement was published to a third-party. *Finlay v. MyLife.com Inc.*, 525 F. Supp. 3d 969, 982 (D. Minn. 2021). If the alleged defamation affects the plaintiff in her business, trade, profession, office, or calling, it is defamation *per se*. *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1142 (8th Cir. 2014) (quoting *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919–20 (Minn. 2009)). In cases of defamation *per se*, the harm to reputation is presumed. *Id.* (quoting *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 307 (Minn. Ct. App. 2001)).

A.   **Plaintiff's Defamation Claim Fails Because Statements of Opinion are Nonactionable.**

The law is clear that statements of opinion cannot constitute defamation. "Opinion is absolutely protected under the First Amendment." *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1302 (8th Cir. 1986) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974)). Whether a statement can be proven false is a question of law. *Thomas*, 743 F.3d at 1142 (citing *Lund v. Chi. & Nw. Transp. Co.*, 467 N.W.2d 366, 369 (Minn. Ct. App. 1991)). Minnesota courts consider four factors when determining whether a statement is fact or opinion: (1) specificity and precision of the statement, (2) verifiability, (3) literary and social context in which it was made, and (4) public context. *Chang v. Cargill, Inc.*, 168 F. Supp. 2d 1003, 1011 (D. Minn. 2001).

1057337\312885023.v1

Terms like "Islamophobia," "homophobic," "racist," or "Nazi," without more, have generally been found to be nonactionable expressions of opinion and/or rhetorical hyperbole. *See, e.g., Hindu Am. Found. v. Viswanath*, No. 21-cv-01268 (APM), __ F. Supp. 3d __, 2022 U.S. Dist. LEXIS 228890, 2022 WL 17820331, *39–40 (D.D.C. Dec. 20, 2022) (granting motion to dismiss, in part, because published implications that foundation perpetuated Islamophobia and hate were statements of opinion); *Schumacher v. Argosy Educ. Group, Inc.*, No. 05-531 (DWF/AJB), 2006 U.S. Dist. LEXIS 88608, 2006 WL 3511795, *46 (D. Minn. Dec. 6, 2006) (holding that an alleged reference to a plaintiff as "homophobic" constitutes a nonactionable opinion); *Cummings v. City of New York*, No. 19-cv-7723 (CM)(OTW), 2020 U.S. Dist. LEXIS 31572, 2020 WL 882335, *54–60 (S.D.N.Y. Feb. 24, 2020) (dismissing defamation claim as nonactionable opinion where plaintiff described in print as "racist"); *Bacon v. Nygard*, 2019 NY Slip Op 32102(U), ¶ 18 (Sup. Ct.) (compiling cases); *Covino v. Hagemann*, 165 Misc. 2d 465, 627 N.Y.S.2d 894 (Sup. Ct. Rich. Cnty. 1995) (granting motion to dismiss, in part, because statement that plaintiff's actions were "racially insensitive" were nonactionable opinions because "racially insensitive and disrespectful racial insensitivity have no meaning which is readily understood.").

Further, terms like "rude," "disrespectful," "unprofessional," "unsatisfactory," "unacceptable," and "inappropriate" are nonactionable expressions of opinion as well. *See, e.g., Hernandez v. Scottsdale Hotel Grp. LLC*, No. CV-20-00349-PHX-DWL, 2020 U.S. Dist. LEXIS 217646, 2020 WL 6827745, *7–9 (D. Ariz. Nov. 20, 2020) (dismissing the plaintiff's defamation claim, in part, because calling an email "rude, threatening, and

1057337\312885023.v1

disrespectful" is a matter of opinion) (compiling cases); *Varughese v. Mt. Sinai Med. Ctr.*, No. 12-8812, 2015 U.S. Dist. LEXIS 43758, 2015 WL 1499618, *74 (S.D.N.Y. Mar. 27, 2015) ("What [the plaintiff] objects to are the characterizations of her work as 'unsatisfactory,' 'unprofessional,' and 'substandard.' But these are matters of *opinion*, not actionable assertions of fact." (emphasis in original)); *Freiburger v. Timmerman*, No. 13-8174, 2014 U.S. Dist. LEXIS 151093, 2104 WL 5423068, *5 (N.D. Ill. Oct. 23, 2014) (dismissing the plaintiff's defamation claim against individuals, in part, because a statement that counter-plaintiff "has handled [the situation] in an extremely unprofessional manner" was opinion that could not give rise to a defamation claim); *Piccone v. Bartels*, 40 F. Supp. 3d 198, 210 (D. Mass 2014) (statement that the plaintiffs were "unprofessional" was "un-ambiguously [an] expression[] of opinion."), *aff'd*, 785 F.3d 766 (1st Cir. 2015); *Kiehn v. Stein*, No. 12-6554, 2013 U.S. Dist. LEXIS 60133, 2013 WL 1789718, *3 (N.D. Cal. Apr. 26, 2013) (dismissing the plaintiff's defamation claim, in part, because "'[E]xtremely inappropriate' and 'unprofessional' are expressions of opinion, and thus not actionable [as defamation]."), *appeal filed,* No. 14-15104 (9th Cir. Jan. 13, 2014); *Hupp v. Sasser*, 200 W. Va. 791, 490 S.E.2d 880, 885 (1997) (holding characterizations of plaintiff as "unprofessional" and his behavior as "unacceptable" were not capable of defamatory meaning).

Plaintiff claims that Hamline University made, adopted, and republished statements that her conduct in displaying the images of the Prophet Muhammad was "inconsiderate"; "disrespectful"; "Islamophobic"; "an act of intolerance"; done to provoke, offend, and hurt Muslim students; done because she does not value Muslims the same as other minorities;

1057337\312885023.v1

and comparable to displaying "pedophilia art," or supporting Nazism and/or white supremacy. (Compl. ¶ 89.) As demonstrated above, these are precisely the sort of non-verifiable statements courts regard as non-actionable opinion. Whether someone is "Islamophobic" is generally in the eye of the beholder, and for that reason cannot be proven true or false. This is demonstrated both by the allegations in Plaintiff's Complaint and the Minnesota chapter of the Council on American-Islamic Relations ("CAIR") considering Plaintiff's actions Islamophobic, but the national organization of CAIR holding a differing view. Francie Diep, *The Academic-Freedom Controversy That Won't Die*, The Chronicle of Higher Education, p. 6, Jan. 13, 2023.[34] Even within Islam—as is repeatedly cited by Plaintiff—there is disagreement about whether showing images of the Prophet Muhammad is Islamophobic. (Compl. ¶¶ 35, 56.) The fact that there are divergent views on this topic is proof positive that whether the actions were Islamophobic is matter of opinion. Accordingly, Plaintiff's defamation claim should be dismissed because the alleged statements "made, adopted, and republished" by Hamline University are statements of nonactionable opinion.

### B.     Privileges Apply to the Statements Ascribed to Hamline University.

Even if the Court were to find that some of these statements were non-actionable opinion, and state a *prima facie* case of defamation, Hamline University cannot be liable

---

[3]     Attached hereto as Exhibit 1.

[4]     In the 8th Circuit, Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional materials in support of the motion. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). Materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion. *Id.*

1057337\312885023.v1

for defamation because the limited purpose public figure privilege or a qualified privilege applies to the statements. *Sherman v. Rinchem Co.*, 687 F.3d 996 (8th Cir. 2012) (holding that a qualified privilege defeats liability for defamation); *Stepnes v. Ritschel*, 663 F.3d 952 (8th Cir. 2011) (citing *Chafoulias v. Peterson*, 668 N.W.2d 642 (Minn. 2003) (holding that the limited purpose public figure privilege defeats liability for defamation)).

### 1.     Plaintiff is a limited purpose public figure.

To determine whether an individual is a limited purpose public figure, courts look to three factors: (1) whether a public controversy existed, (2) whether the plaintiff played a meaningful role in the controversy, and (3) whether the allegedly defamatory statement related to the controversy. *Id.* at 963 (quoting *Chafoulias*, 668 N.W.2d at 651). Whether the public figure privilege applies is a question of law where material facts concerning public figure status are not in dispute. *Chafoulias*, 668 N.W.2d at 649.

A public controversy is a dispute that "has received public attention because its ramifications will be felt by persons who are not direct participants." *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296 (D.C. Cir. 1980). Private concerns are not public controversies simply because they attract attention. *Chafoulias*, 668 N.W.2d at 651–52. In isolating a public controversy, courts look to those controversies that are already the subject of debate in the public arena at the time of the alleged defamation. *Id.* at 652.

Whether depictions of the Prophet Muhammad may be displayed is undisputedly a public controversy. This dispute cannot be described as a private concern that has attracted attention and been made public. Plaintiff's Complaint makes clear this is a public controversy, both before and after her display of paintings of the Prophet Muhammad. (*See*

Compl. ¶¶ 5–6, 10–11, 18–21, 23–24, 26–27, 33–35, 40, 42, 45, 48, 51, 53, 55–58.) Having satisfied the first element of the limited purpose public figure privilege, the Court must analyze the second factor.

To determine whether a plaintiff played a meaningful role in the controversy, courts look to whether the plaintiff "voluntarily injected" herself or was "drawn into" that controversy. *Chafoulias*, 668 N.W.2d at 653 (quoting *Gertz*, 418 U.S. at 351)). In other words, courts determine whether the plaintiff thrust herself to the forefront of the controversy so as to achieve "special prominence" in the debate and become a factor in resolving the controversy. *Id.* Here, the Complaint makes clear that Plaintiff played a meaningful role in the controversy and thrust herself to the forefront of the debate. Again, Plaintiff's Complaint alleges she was at the center of this public controversy, whether she voluntarily injected herself or was drawn into it. (*See* Compl. ¶¶ 5–6, 14–21, 27, 34, 40, 42, 45, 51, 53.) Plaintiff has "assumed [a] role[] of especial prominence in society" that naturally "invites attention and comment" from the public and the press. *Chafoulias*, 668 N.W.2d at 654 (quoting *Gertz*, 418 U.S. at 345).

Finally, it is clear that the allegedly defamatory statements related to the controversy. Plaintiff claims that she was defamed by: Everett's statement in his November 7, 2022 email that she had engaged in conduct that was "undeniability [*sic*] inconsiderate, disrespectful, and Islamophobic"; Kersten's statement to *The Oracle* student newspaper that Plaintiff's conduct was "an act of intolerance"; and Hussein's statements at the December 8, 2022 "Community Conversation." (Compl. ¶¶ 89–90.) These alleged

defamatory statements are undisputedly related to the public controversy regarding Plaintiff's display of images of the Prophet Muhammad. (*Id.* at ¶¶ 32–34, 45–47, 55–58.)[5]

Accordingly, the limited purpose public figure privilege applies to all of the alleged defamatory statements in Plaintiff's Complaint and Hamline University cannot be held liable for them. Therefore, this Court should grant Hamline University's Motion to Dismiss on Plaintiff's defamation claim.

### 2. Qualified privilege attaches to Everett's email sending the "Community Conversation" video.

To be privileged, a statement "must be made in good faith and must be made upon proper occasion, from a proper motive, and must be based upon reasonable or probable cause." *Thomas*, 743 F.3d at 1143 (quoting *Bol v. Cole*, 561 N.W.2d 143, 149 (Minn. 1997)). A court determines qualified privilege as a matter of law. *Chambers v. Travelers Cos.*, 668 F.3d 559, 564 (8th Cir. 2012) (citing *Bahr*, 766 N.W.2d at 920). When a qualified privilege applies, the statement is protected unless the plaintiff can prove the statements were made with actual malice. *Sherman v. Rinchem Co.*, 687 F.3d 996, 1009 (8th Cir. 2012). To show malice, the plaintiff must demonstrate that the speaker acted with "actual ill-will or a design causelessly and wantonly to injure plaintiff." *Id.*

Statements made by Hussein during the "Community Conversation" cannot be classified as "made" by Hamline University because Hussein is not employed by or otherwise an agent of Hamline University. (Compl. ¶ 55.) Therefore, Plaintiff's claim

---

[5]     Plaintiff concedes in the Complaint that she was not identified by name by Hamline University, but that it was discovered and published by third party media organizations. (Compl. ¶¶ 37, 51.)

1057337\312885023.v1

against Hamline University in this regard necessarily is that Hamline University defamed

her when it "adopted" and "republished" these statements when Everett emailed a video of

the "Community Conversation" to Hamline employees.[6] Plaintiff's Complaint

demonstrates that Everett's sharing of the "Community Conversation" video was in good

faith, made upon proper occasion, from a proper motive, and is based upon reasonable or

probable cause. Everett hosted the "Community Conversation" on Hamline University's

campus to address instances of Islamophobia on campus. (*Id.*) In fact, Plaintiff's Complaint

alleges that Everett distributed the video of the "Community Conversation" in the course

of his employment, including the opinions of Hussein and the professor's statements

supporting Plaintiff. (*See id.* at ¶¶ 55–60.) Plaintiff does not allege that Everett made any

statements in his email supporting or reiterating Hussein's opinions or denouncing the

professor's statements. Therefore, it is clear from Plaintiff's allegations that Everett shared

the video in good faith and upon proper occasion, from a proper motive, and based upon

reasonable or probable cause.

Accordingly, the qualified privilege applies to Everett's sharing of the "Community

Conversation" video, and Hamline University cannot be held liable in this regard.

Therefore, this Court should grant Hamline University's Motion to Dismiss on Plaintiff's

defamation claim.

---

[6]    Plaintiff makes the conclusory allegation that Everett and Hamline University
"demonstrated their support and agreement with Hussein's defamatory statements
regarding [Plaintiff] and adopted them as their own." (Compl. ¶ 59.) Plaintiff, however,
fails to allege any facts evidencing Hamline University's support of or agreement with
Hussein's statements.

1057337\312885023.v1

## V.   PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In order to establish a claim for intentional infliction of emotional distress ("IIED"), the plaintiff must allege that the defendant's conduct was: (1) extreme and outrageous, (2) was intentional or reckless, and (3) caused emotional distress which (4) was severe. *McDonald v. City of St. Paul*, 679 F.3d 698, 708 (8th Cir. 2012) (quoting *Langeslag v. Kymn, Inc.*, 664 N.W.2d 860, 864 (Minn. 2003)). A high threshold applies to claims for IIED. *Id.*

Conduct is "extreme and outrageous" when it is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community. *Id.* (quoting *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 439 (Minn. 1983)). The plaintiff has a heavy burden of production in the allegations to satisfy the fourth element. *Njema v. Wells Fargo Bank, N.A.*, 124 F. Supp. 3d 852, 875 (D. Minn. 2015). The emotional distress must be "so severe that no reasonable [person] could be expected to endure it." *Id.* General embarrassment, nervousness, and depression are not in themselves a sufficient basis for a claim in IIED. *Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 971 (D. Minn. 2009) (citing *Eklund v. Vincent Brass and Aluminum Co.*, 351 N.W.2d 371, 379 (Minn. Ct. App. 1984)). The purpose of this heavy burden is to limit claims for IIED to "cases involving particularly egregious facts" and "reflects a strong policy to prevent fictitious and speculative claims. *Peterson v. Plymouth*, 945 F.2d 1416, 1421 (citing *Hubbard*, 330 N.W.2d at 439–40.

1057337\312885023.v1

In *Clemons v. MRCI WorkSource*, the plaintiff alleged that MRCI staff members routinely subjected him to ridicule and harassment and MRCI issued him a corrective action that contained erroneous allegations. A13-1994, 2014 Minn. App. Unpub. LEXIS 519, *7 (May 27, 2014). The Minnesota Court of Appeals held that the plaintiff's conclusory allegations of knowingly wrongful conduct did not allege extreme and outrageous behavior. *Id.* (citing *Langeslag v. KYMN, Inc.*, 664 N.W.2d 860, 865 (Minn. 2003) (concluding that making false police reports, threatening to take legal action, and loud and profane workplace arguments did not rise to the level of outrageous conduct to support a claim for IIED). In relation to Plaintiff's IIED claim, Plaintiff alleges Hamline University is liable because in response to Plaintiff's display of the Prophet Muhammad in her class: (1) denounced her actions as an "act of intolerance," (2) announcing her termination before her last day of class, and (3) "facilitating her further public defamation and humiliation." As in *Clemons* and *Langeslag*, these alleged actions are simply not extreme and outrageous and cannot survive Hamline University's Motion to Dismiss.

Further, conclusory allegations that a plaintiff has suffered severe emotional distress are not sufficient to overcome a motion to dismiss. *Cherry v. Lake*, Case No. 22-CV-2012 (JRT/JFD), 2023 U.S. Dist. LEXIS 19135, 2023 WL 1767832, *15–16 (D. Minn. Jan. 17, 2023) (citing *Langeslag*, 664 N.W.2d at 868); *Clemons*, 2014 Minn. App. Unpub. LEXIS 519, *8 (holding the plaintiff's allegations of "mental anguish, humiliation, embarrassment, and other damages" as a result of MRCI's actions were insufficient to survive a motion to dismiss). Plaintiff baldly alleges only that she experienced "feelings of isolation, embarrassment, lack of support, humiliation, . . . extreme emotional distress,"

and "various physical manifestations of that distress" as a result of Hamline University's actions. (Compl. ¶¶ 38, 93.) The mere assertion that Plaintiff suffered mental and emotional trauma is too broad and vague to establish that the emotional distress suffered was beyond what a reasonable person could be expected to endure. *McClendon v. Roy*, A19-0528, 2019 Minn. App. Unpub. LEXIS 1067, *15, 2019 WL 6112448 (dismissing the plaintiff's complaint where the plaintiff only made conclusory allegations that he suffered "mental and emotional trauma"). Because Plaintiff only makes conclusory allegations that she suffered emotional distress and physical manifestations therefrom, she cannot establish a claim for intentional infliction of emotional distress against Hamline University. Accordingly, Plaintiff's intentional infliction of emotional distress claim should be dismissed.

## VI.   PLAINTIFF'S CLAIM FOR VIOLATION OF THE MINNESOTA WHISTLEBLOWER ACT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The Minnesota Whistleblower Act ("MWA") prohibits employers from taking an adverse action against an employee, who "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common low or rule adopted pursuant to law to an employer...." Minn. Stat. § 181.932, subd. 1(1) (2022). Retaliation claims under the MWA are analyzed under the *McDonnell-Douglas* three-part burden shifting test. *Calvit v. Minneapolis Pub. Sch.*, 122 F.3d 1112, 1118 (8th Cir. 1997) (citing *Rothmeier v. Investment Advisers, Inc.*, 556 N.W.2d 590, 592 (Minn. Ct. App. 1997)). As stated above, to establish a *prima facie* case of retaliation, Plaintiff must allege facts that when taken as true establish that (1) the plaintiff engaged in statutorily-protected activity,

(2) the plaintiff suffered an adverse action by the defendant, and (3) a causal connection exists between the two. *Id*. The causal connection requirement may be satisfied by evidence of circumstances that justify an inference of retaliatory motive, such as showing that the employer had actual or imputed knowledge of the protected activity and the adverse action follows closely in time. *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 819 (8th Cir. 2017) (quoting *Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319, 327 (Minn. 1995)).

In order to state a MWA claim, Minnesota courts require that a plaintiff allege enough facts for the Court to determine: (1) the contents of their report, (2) the law the report implicates, and (3) that the conduct reported, if true, would violate the law. *See Wetzel v. Axis Clinicals, LLC*, No. 15-CV-3122 (JNE/SER), 2016 U.S. Dist. LEXIS 1785, 2016 WL 81795, *1 (D. Minn. Jan. 7, 2016) (dismissing MWA claim which offered allegations "too scant" for the Court to "adequately discern the content of [plaintiff's] report and what law, if any, [was] implicated by the facts alleged, as opposed to the legal conclusions asserted." (Erickson, J.); *Anderson v. Hearing Lab Tech., LLC*, No. 17-CV-5527 (PJS/FLN), 2018 U.S. Dist. LEXIS 56341, 2018 WL 2670615, *1 (D. Minn. Apr. 3, 2018) (dismissing complaint for failure to plead facts that the plaintiff "reported facts that, if true, constituted an *actual* violation of the law" and) (Schlitz, J.) (emphasis in original); *Reisdorf v. i3, LLC*, No. CV 14-780 (DWF/HB), 2015 WL 12977075, at *4 (D. Minn. Apr. 21, 2015) (dismissing complaint where the plaintiff "fail[ed] to allege facts demonstrating that the reported conduct . . . implicated a violation of the law.") (Frank, J.) (citing *Obst v. Microton, Inc.*, 614 N.W.2d 196, 200 (Minn. 2000), *abrogated on other grounds*,

*Friedlander v. Edwards Lifesciences, LLC*, 900 N.W.2d 162, 166 (Minn. 2017); *Abraham*, 639 N.W.2d at 354–55).

Whether an employee's conduct constitutes protected activity is a question of law. *Skare v. Extendicare Health Servs., Inc.*, 515 F.3d 836, 840 (8th Cir. 2008) (citing *Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001)). While an employee need not identify in her report the specific law being violated to establish a viable MWA claim, the reported conduct must implicate some federal or state law or rule. *Coubal v. Power Sys. AHS, LLC*, Civil No. 20-2296 ADM/JFD, 2022 U.S. Dist. LEXIS 87378, 2022 WL 1541643, *23 (D. Minn. May 16, 2022) (citing *Kratzer v. Welsh Cos.*, 771 N.W.2d 14, 19 (Minn. 2009)). A report that alleges troubling, but nevertheless lawful behavior, does not constitute protected activity under the MWA. *Scarborough v. Federated Mut. Ins. Co.*, 996 F.3d 499, 506 n.3 (8th Cir. 2021) (quoting *Kratzer*, 771 N.W.2d at 22).

Put another way, while an employee's mistake of fact will not void a MWA claim, an employee's mistake of *law* does. *See Johnson v. U.S. Bancorp*, No. CV 15-1922 (DSD/TNL), 2016 U.S. Dist. LEXIS 61910, 2016 WL 2733408, at *4 (D. Minn. May 10, 2016) (holding inadvertently inaccurate statement in filing with Office of the Comptroller of Currency was not illegal and thus not actionable under the MWA); *Weber v. Minn. Sch. Bus., Inc.*, No. A14-0831, 2014 Minn. App. Unpub. LEXIS 1295, 2014 WL 7011353, at *3 (Minn. Ct. App. Dec. 15, 2014) (determining employee's report that the employer did not conduct criminal background checks, the employer mishandled its externship program, and employer failed to inform students about changes in accreditation were not actionable under the MWA because they did not raise violations of the law); *Petroskey v. Lommen,*

1057337/312885023.v1

*Nelson, Cole & Stageberg, P.A.*, 847 F. Supp. 1437, 1447 (D. Minn. 1994) (finding no violation of MWA where employee's report of law firm partner's sexually abusive tirade of female paralegal, while reprehensible, did not invoke whistleblower protection); *Nordling v. N. States Power Co.*, 478 N.W.2d 498, 504 (Minn. 1991). Accordingly, courts assess MWA claims by "assum[ing] the facts have occurred as reported and then determine . . . whether those facts 'constitute a violation of law or rule adopted pursuant to law.'" *Schwab v. Altaquip LLC*, Case No. 14-CV-1731 (PJS/JSM), 2015 U.S. Dist. LEXIS 114248, 2015 WL 5092036, *9 (D. Minn. Aug. 28, 2015) (quoting *Kratzer*, 771 N.W.2d at 22).

Plaintiff has not alleged that she made any report to Hamline University regarding any acts or conduct that would constitute a violation of law or a protected activity before Plaintiff was informed that she would not be retained for the spring 2023 semester. Indeed, besides Plaintiff's objections to alleged religious discrimination,[7] Plaintiff only alleges facts supporting that she objected to Hamline University about Everett's email being defamatory. (Compl. ¶ 43.) Plaintiff makes conclusory allegations that she engaged in "protected conduct under the MWA, including but not limited to when she reported that she had been defamed." (*Id.* at ¶ 97.) However, this allegation is unsupported by any other facts that would allow the Court to determine the contents of her report. Plaintiff further makes the conclusory allegation that Hamline University violated the MWA by "failing to

---

[7]    An employee may not seek redress for the same allegedly discriminatory practices on the same facts under both the MHRA and the MWA. *Abraham*, 639 N.W.2d at 347 (citing *Williams v. St. Paul Ramsey Med. Ctr.*, 551 N.W.2d 483, 486 (Minn. 1996)).

1057337\312885023.v1

follow and apply its policies on academic freedom to Lopez Prater, defaming Lopez Prater, and failing to renew Lopez Prater's contract for the spring 2023 term, because of her protected conduct." (*Id.* at ¶ 98.) Plaintiff, however, as further discussed below, fails to even allege that she reported any of these alleged violations to Hamline University before she was notified that she would not be provided the opportunity to teach in the spring 2023.

If this Court finds that Plaintiff fails to state a claim for defamation—as it should—Plaintiff could not have engaged in protected activity when she complained about alleged defamation. As stated above, where facts as stated do not constitute a violation of law or rule adopted pursuant to law, Plaintiff cannot maintain a MWA claim.

Even if Plaintiff's defamation claim survives and this court finds that she engaged in protected activity when she complained to Hamline University about defamation, Plaintiff's MWA claim fails because she has not sufficiently pled a causal connection between her protected activity and the alleged adverse actions. Plaintiff alleges that she objected to Hamline University's defamation of her on November 18, 2022. (Compl. ¶¶ 42–43.) However, Plaintiff alleges that on October 24, 2022, she was informed that Hamline University was canceling the class she was asked to teach during the spring 2023 term and that her contract would not be renewed. (*Id.* at ¶ 29.) As alleged, a causal connection between Plaintiff's alleged protected activity and Hamline University's alleged adverse action cannot exist since the alleged adverse action occurred before the alleged protected activity. *See, e.g., Chivers v. Wal-Mart Stores, Inc.*, 641 F.3d 927, 933 (8th Cir. 2011). Accordingly, Plaintiff fails to state a claim under the MWA.

1057337\312885023.v1

## **CONCLUSION**

Accordingly, Plaintiff's Complaint fails to state a claim upon which relief can be

granted and is properly dismissed under Federal Rules of Civil Procedure Rule 12(b)(6).

Dated: March 9, 2023                    **HINSHAW & CULBERTSON LLP**

                                        */s/ Mark T. Berhow*
                                        Mark T. Berhow, Reg. No. 031450X
                                        Kevin R. Coan, Reg. No. 29357X
                                        250 Nicollet Mall, Suite 1150
                                        Minneapolis, MN 55401
                                        Telephone: 612-333-3434
                                        Facsimile: 612-334-8888
                                        mberhow@hinshawlaw.com
                                        kcoan@hinshawlaw.com

                                        ***Attorneys for Defendant Trustees of the
                                        Hamline University of Minnesota***

1057337\312885023.v1