UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Erika López Prater, | Case No. 23-cv-00505 (KMM-DJF) |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM OF LAW SUPPORTING PLAINTIFF'S MOTION TO REMAND** |
| Trustees of the Hamline University of Minnesota, | |
| Defendant. | |

---

## INTRODUCTION

Plaintiff Erika López Prater sued Defendant Trustees of the Hamline University of Minnesota in Minnesota state court, Ramsey County. López Prater is a Minnesota resident, and Hamline's campus is in Ramsey County. Her complaint asserts only state law claims, including violations of the Minnesota Human Rights Act ("MHRA"), defamation, intentional infliction of emotional distress, and violation of the Minnesota Whistleblower Act ("MWA"). It is a lawsuit between two citizens of Minnesota, alleging no causes of action under federal law. Hamline removed the case to federal court anyway.[1]

As justification for its removal, Hamline asserts that López Prater was a member of a union, that her state-law claims require interpretation of a collective bargaining agreement ("CBA"), and that her state-law claims are therefore completely preempted by

---

[1] Hamline illogically accuses López Prater of "forum shopping" merely for exercising her right as a Minnesota citizen to have her Minnesota state law claims against a Minnesota entity adjudicated by a Minnesota state court.

section 301 of the Labor Management Relations Act ("LMRA").

Hamline is wrong. López Prater's claims do not emanate from a CBA, require no interpretation of a CBA, and are not preempted by the LMRA. The Court thus has no subject-matter jurisdiction to hear this case. Importantly, Hamline has tacitly conceded the point. Hamline filed a motion to dismiss López Prater's claims but never argues complete preemption as a basis for dismissal.

López Prater's case must be remanded to the Ramsey County Court, and López Prater further asks that the Court require Hamline to pay López Prater's reasonable attorney's fees and costs incurred as a result of Hamline's removal, pursuant to 28 U.S.C. § 1447(c).

## FACTUAL BACKGROUND

### I.   THE UNDERLYING COMPLAINT.

Hamline hired López Prater as an Undergraduate Adjunct in its College of Liberal Arts to teach a world art history course in the fall 2022 term. (Compl. ¶ 4.) In her syllabus, López Prater notified her students that the class may include showing and discussing depictions of holy figures, including the Prophet Muhammad, and invited students to meet with her in advance to arrange for accommodations if this would be a problem for them. (*Id.* ¶ 6.) None did. (*Id.* ¶ 11.)

López Prater provided the syllabus to her supervisor, Allison Baker, and to Hamline administrative staff. (*Id.* ¶¶ 7-8.) Neither expressed concern about her displaying historical images of the Prophet Muhammad as part of the world art history course. (*Id.*) To the contrary, partway into the semester, Baker told López Prater that students had provided her

nothing but positive feedback about López Prater's teaching and invited López Prater to teach a contemporary art course in the spring. (*Id.* ¶ 12-13.) López Prater agreed, and Hamline subsequently offered the contemporary art course to students as part of spring enrollment. (*Id.*)

On October 6, 2022, in a unit on Islamic art, López Prater displayed two highly regarded centuries-old paintings from devout Muslims depicting the Prophet Muhammad. (*Id.* ¶¶ 14-17.) Some Muslims object to the creation or viewing of art containing images of the Prophet Muhammad. (*Id.* ¶ 5.) López Prater thus endeavored to provide advance notice that the images would be displayed and explained their educational and artistic significance. (*Id.* ¶ 18.)

Despite having ample notice that the paintings would be displayed, and despite having ample opportunity to not view the paintings, a Muslim student reportedly viewed the paintings and took great offense. (*Id.* ¶ 19.) The student stayed after class to express her outrage. She did not contend that López Prater had sprung the pictures on the students. She instead took offense that López Prater had not complied with the student's religious tenant holding that images of the Prophet Muhammad must never be shown to anyone at all, Muslim or otherwise. (*Id.* ¶¶ 20-21.)

López Prater notified Baker about the situation. Baker was initially supportive, saying she "believe[d] in academic freedom," but a few days later suggested López Prater apologize to the student. (*Id.* ¶¶ 22-23.) The apology did not satisfy the student. (*Id.* ¶¶ 24-25.)

On or about October 10, 2022, Marcela Kostihova, Dean of Hamline's College of

3

Liberal Arts, criticized López Prater's decision to display images of the Prophet Muhammad, equated it to "shitting on Islam" or using the "n word" in class, alleged that there had been a large outcry amongst the Muslim Student Association and Muslim faculty and staff, and reported that Muslim staff were threatening to resign. (*Id.* ¶ 26.) López Prater explained her reasoning for displaying the images and the steps she took to respect the wishes of those who did not want to see them. She asserted that excluding Muslim images of the Prophet Muhammad from a world art history course would be discriminatory, in that it would privilege the religious views of some Muslims over people of other religious views, including other Muslims. (*Id.* ¶¶ 26-27.)

López Prater nevertheless apologized to her class the next day, October 11, 2022. (*Id.* ¶ 28.) On October 24, 2022, however, Baker notified López Prater that the spring contemporary art course was cancelled, and López Prater's contract would not be renewed. (*Id.* ¶ 29-30.) Hamline then publicly defamed López Prater, announced that López Prater had been expelled from the "Hamline community" for showing the paintings, proudly republished defamatory statements made by the executive director of the Minnesota chapter of the Council on American-Islamic Relations, sought to silence those who supported López Prater, and hired a different adjunct to teach a spring semester art course that López Prater was plainly qualified to teach. (*Id.* ¶¶ 31-70.)

## II.  PROCEDURAL HISTORY.

Plaintiff commenced her original lawsuit by service of a summons and complaint on January 17, 2023, and then filed the lawsuit in the Minnesota District Court for Ramsey County. (D. Minn., Case No. 23-cv-00313 (PAM/JFD), Doc. 1-1.) The original complaint

4

asserted only state-law claims, including claims for violations of the MHRA and MWA, as well as common law claims for breach of contract, promissory estoppel, defamation, intentional infliction of emotional distress. (*Id.*)

Twenty-one days later, on February 7, 2023—Hamline's deadline to file a responsive pleading or move to dismiss—Hamline filed a notice of removal to the Minnesota Federal District Court. (*Id.*, Doc. 1.) In its notice of removal, Hamline asserted that López Prater was a union employee subject to a CBA, that some or all of her state-law claims required interpretation of certain provisions of the CBA, and that those claims were therefore completely preempted by the LMRA. (*Id.*)

On February 9, 2023, López Prater filed a notice of voluntary dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), and the Court ordered the case dismissed without prejudice the same day. (*Id.*, Doc. 7, 8.) López Prater then immediately commenced a new state court action by service of a modified summons and complaint which omitted the breach of contract and promissory estoppel claims.[2] (Summons and Complaint, Doc. 1-3.[3]) Hamline waited the full twenty-one days to respond, and, on March 2, 2023, filed a notice of removal to the Minnesota Federal District Court. (Notice of Removal, Doc. 1.) Hamline again asserted federal-question jurisdiction due to its supposed defense of complete preemption under the LMRA. (*Id.*)

---

[2] The current complaint has yet to be filed in Ramsey County Court. Under the Minnesota Rules of Civil Procedure, a civil action is commenced by serving the summons and complaint on the defendants, which pleadings may then be filed in district court within one year after commencement. Minn. R. Civ. P. 3.01 and 5.04.

[3] This, and all subsequent citations to court filings, refers to the filings in the instant case, Case No. 23-cv-00505 (KMM-DJF).

5

Soon after removal, Hamline filed a motion to dismiss López Prater's complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Defendant's Motion to Dismiss, Doc. 7; Def. Mem. Supp. Mot. to Dismiss, Doc. 9, at 9.) In its memorandum supporting its motion, Hamline notes that its basis for removal was complete preemption under the LMRA. (Def. Mem. Supp. Mot. to Dismiss, Doc. 9, at 9.) If complete preemption applied, a Rule 12 motion for failure to state a claim would be an appropriate vehicle for dismissing the preempted claims. *See*, *e.g.*, *Banks v. Alexander*, 294 Fed. Appx. 221, 223 (6th Cir. 2008) (upholding motion to dismiss for failure to state a claim based on complete preemption by the LMRA). It is thus telling that Hamline did not raise complete preemption as a basis for dismissal of any of López Prater's claims. (Def. Mem. Supp. Mot. to Dismiss, Doc. 9, at 10-35.)

## **STANDARD**

Under 28 U.S.C. § 1441, "[a] defendant's removal of a case to federal court is appropriate only if the action originally could have been filed there." *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 444 (8th Cir. 2010) (internal quotations omitted). Following removal, a "plaintiff may move to remand the case if the district court lacks subject matter jurisdiction." *Id.* (citing 28 U.S.C. § 1447(c)). "[T]he defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). If the defendant fails to meet that burden, the district court must remand the case. 28 U.S.C. § 1447(c). "All doubts about federal jurisdiction should be resolved in favor of remand to state court." *In re Prempro*, 591 F.3d at 620.

The only asserted jurisdictional basis for removal here is federal question jurisdiction. Such jurisdiction applies to actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In assessing whether federal question jurisdiction exists, courts must employ the "well-pleaded complaint rule" and look only to the face of the complaint. *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Generally, a court cannot have federal question jurisdiction based on a defense, even if the defense is based on federal law. *Id.*; *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 247 (8th Cir. 2012). "'[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.'" *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1242-43 (8th Cir. 1995) (quoting *Caterpillar Inc.*, 482 U.S. at 393).

However, there is an exception in cases of complete preemption—where the statute "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal." *Johnson*, 701 F.3d at 247 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)). "A conclusion that there is complete preemption effectively maintains that 'the plaintiff has simply brought a mislabeled federal claim, which may be asserted under some federal statute.'" *Id.* (quoting *King v. Marriott Int'l Inc.*, 337 F.3d 421, 425 (4th Cir. 2003)).

López Prater's claims are not simply mislabeled federal claims, and they are not completely preempted by the LMRA. This case must accordingly be remanded to

Minnesota state court.

# ARGUMENT

## I.     THE LMRA PREEMPTION DOCTRINE IS APPLIED NARROWLY.

Section 301(a) of the LMRA creates a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ." 29 U.S.C. § 185(a). Congress enacted section 301 to provide a uniform body of federal common law to resolve labor disputes. *Trs. of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006). In recognition of this legislative goal, the United States Supreme Court has held that any state law claim founded on rights created by a CBA is preempted under section 301, *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102–03 (1962), as well as any claim whose resolution is substantially dependent upon or "inextricably intertwined" with interpretation of the terms of such an agreement. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220 (1985).

On the other hand, "section 301 does not preempt state law claims merely because the parties involved are subject to a CBA and the events underlying the claim occurred on the job." *Williams v. Nat'l Football League*, 582 F.3d 863, 874 (8th Cir. 2009). *See also Lueck*, 471 U.S. at 211 ("Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 . . . ."); *Graham v. Contract Transp., Inc.*, 220 F.3d 910, 913 (8th Cir. 2000) (providing that "a claim is not preempted simply because it relates to a dispute in the workplace"). "Mere reference to a collective bargaining agreement is not sufficient to result

8

in preemption," *Thomas v. Union Pac. R.R. Co.*, 308 F.3d 891, 893 (8th Cir. 2002), and "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Additionally, a claim is not preempted simply because it involves an event in the workplace that may be subject to grievance procedures under a labor contract. *Graham v. Contract Transp., Inc.,* 220 F.3d 910, 913 (8th Cir. 2000). *See also Meyer v. Schnucks Markets, Inc.*, 163 F.3d 1048, 1050 (8th Cir. 1998) ("The Supreme Court has held that the fact that a CBA provides for arbitrated dispute resolution for claims based on the same facts as those forming the basis for a plaintiff's complaint does not mean that state-law causes of action based on those facts are preempted."). Section 301 preemption is thus applied narrowly, asking only whether the claim itself is necessarily grounded in rights established by the CBA. *Meyer*, 163 F.3d at 1051.

When applying the section 301 preemption doctrine, courts must begin with "the claim itself," and then "apply a two-step approach in order to determine if the claim is sufficiently independent to survive section 301 preemption . . . ." *Williams*, 582 F.3d at 874 (internal quotations and citations omitted). First, a state-law claim is preempted if it is based on a provision of the CBA, meaning that the CBA provision at issue actually sets forth the right upon which a claim is based. *Id.* Second, section 301 preemption applies where a state-law claim is dependent on an analysis of the relevant CBA, meaning it requires interpretation of a provision of the CBA. *Id.* If the defendant cites no CBA provisions that purportedly impose a duty upon which the plaintiff's claim depends, and

9

nothing in the pleadings suggest the plaintiff's claims are substantially dependent on interpretation of a CBA, then there is no complete preemption under the LMRA. *See*, *e.g.*, *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 189 F. Supp. 3d 856, 880-82 (D. Minn. 2016) (rejecting defendant's assertion of LMRA preemption).

**II.    NONE OF PLAINTIFF'S CLAIMS ARE BASED ON A PROVISION OF THE CBA.**

López Prater raises three claims based solely on Minnesota statutes: Count I for religious discrimination in violation of the MHRA, Minn. Stat. § 363A.08, subd. 2; Count II for reprisal in violation of the MHRA, Minn. Stat. § 363A.15; and Count V for retaliation in violation of the MWA, Minn. Stat. § 181.932, subd. 1. The rights upon which these claims are based are limited to those rights set forth in the relevant Minnesota statutes. None of them are dependent upon rights established by any CBA.

López Prater also asserts two claims based solely on the Minnesota common law: Count III for defamation and Count IV for intentional infliction of emotional distress. Neither of these claims are dependent upon rights established by any CBA. *Cf. Conrad v. Xcel Energy, Inc.*, 12-CV-2819 PJS/FLN, 2013 WL 1395877, at *5 (D. Minn. Apr. 5, 2013) ("No CBA can exempt [the defendant] from the statutory or common law of Minnesota, and thus adjudicating [the plaintiff's] contract-relations claim will not require the interpretation of any CBA."). López Prater's claims are not preempted under the first step of the section 301 preemption analysis.

**III.   NONE OF PLAINTIFF'S CLAIMS REQUIRE INTERPRETATION OF ANY PROVISION OF THE CBA.**

Hamline fares no better under the second step of the analysis. "Claims that revolve

around the conduct or motive of the parties generally are not preempted because they do not require interpretation of the collective bargaining agreement." *Thomas v. Union Pacific Railroad Co.*, 308 F.3d 891, 893 (8th Cir. 2002). *See also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988) (retaliatory discharge claims require analysis of the employee's conduct and the motivations of the employer, each of which do not require interpretation of the CBA).

For her MHRA religious discrimination and reprisal claims, López Prater alleges that Hamline subjected her to several adverse actions, including "failing to renew her contract for the spring 2023 semester, violating its [contractual] guarantee of academic freedom,[4] publicly denouncing López Prater as 'Islamophobic' and her conduct 'an act of intolerance,' announcing her non-renewal before the end of fall semester classes, and assisting and/or facilitating further public defamation and humiliation of López Prater." (Complaint, Doc. 1-3, at 19, ¶ 78, and at 20, ¶ 85.) López Prater alleges that Hamline was motivated to take these actions in part because "Hamline had an expectation that López Prater would conform to the specific beliefs of a Muslim sect that believes it is forbidden

---

[4] The contractual guarantee of academic freedom is not based on any CBA, but rather on section 3.1 of Hamline's Faculty Handbook, which applies to "all faculty members of Hamline." (Complaint, Doc. 1-3, at 17, ¶¶ 64-65.) Conversely, the SEIU Local 284 CBA Hamline relies upon only applies to "regular part-time non-tenured and non-tenure eligible Adjunct Instructors, Adjunct Faculty, Instructors, Adjunct Professors, and Adjuncts employed by the University who teach undergraduate labs or credit-earning classes toward an academic degree on the University's St. Paul, Minnesota campus," and specifically excludes many types of faculty members. (CBA, Doc. 1-1, at 4, §§ 1 and 2.) López Prater was entitled to the contractual protections of the Faculty Handbook whether or not she was a union member. There is no need to interpret a CBA in connection with this aspect of López Prater's claims.

11

to portray the image of the Prophet Muhammad," and López Prater did not conform herself to that expectation. (Complaint, Doc. 1-3, at 19, ¶¶ 72-77.) López Prater further alleges that Hamline was motivated to take these actions in part because she opposed Hamline's discriminatory favoritism of Muslims who believe that images of the Prophet Muhammad should not be shown to anyone. (*Id.* at 8-9, ¶ 27, and 20, ¶ 84.) The MHRA claims are based on the conduct and motives of the parties, and do not require interpretation of any provision of the CBA.

For her MWA claim, López Prater alleges that Hamline subjected her to various adverse actions, including "failing to follow and apply its policies on academic freedom to López Prater, defaming López Prater, and failing to renew López Prater's contract for the spring 2023 term . . . ." (*Id.* at 23, ¶ 98.) She alleges Hamline was motivated to take these actions in part because she reported to Hamline that she had been defamed. (*Id.* at 12-13, ¶¶ 43-44, and 23, ¶ 98.) The MWA claim is thus based on the conduct and motives of the parties and does not require interpretation of any provision of the CBA.

For her defamation claim, López Prater points to many statements published and/or republished by Hamline, including that she engaged in conduct that she was "undeniably inconsiderate, disrespectful, and Islamophobic," an "act of intolerance" done to provoke, offend, and hurt Muslim students, that she does not value Muslims the same as other minorities, and that her conduct was comparable to the crime of displaying "pedophilia art" or supporting Nazism and/or white supremacy. (*Id.* at 21, ¶ 89.) López Prater further alleges that "Hamline made, adopted, and republished these false statements in bad faith, with malicious intent, and knowing of their falsity or in reckless disregard of the truth." (*Id.* at

22, ¶ 90.) The defamation claim is thus based on the conduct and motives of the parties and does not require interpretation of any provision of the CBA.

Finally, for her claim for intentional infliction of emotional distress, López Prater alleges that Hamline intentionally engaged in extreme and outrageous conduct toward her, including denouncing López Prater as Islamophobic and intolerant, maximizing her emotional distress by announcing her termination before her last day of class, and assisting and/or facilitating her further public defamation and humiliation. (*Id.* at 22, ¶ 93.) This claim is based on Hamline's conduct and does not require interpretation of any provision of the CBA.

Because López Prater's claims are not based on any CBA and do not require interpretation of any provision of a CBA, they are not preempted by section 301 of the LMRA, there is no basis for federal question jurisdiction, and the case must be remanded to Minnesota state court, as required by 28 U.S.C. § 1447(c).

### IV. PLAINTIFF SHOULD BE AWARDED ATTORNEY'S FEES AND COSTS INCURRED AS A RESULT OF THE REMOVAL.

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Attorney's fees and costs are awarded under § 1447(c) to "deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005).

Accordingly, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The test for whether there is a reasonable basis for removal is whether the relevant case law clearly foreclosed the defendant's basis of removal. *Lott v. Pfizer, Inc.*, 492 F.3d 789, 794 (7th Cir. 2007).

It is notable that Hamline waited until the last moment to file its notice of removal. The second (current) complaint is nearly identical to the first, other than omitting the breach of contract and promissory estoppel claims. The second notice of removal is very much like the first. It should not have taken Hamline twenty-one days to file the second notice of removal. Hamline's apparent intention was thus to prolong this litigation.

Second, Hamline had no reasonable basis to file its notice of removal. The relevant case law makes it abundantly clear that section 301 of the LMRA does not completely preclude claims that merely reference provisions of a CBA or that involve facts that would give rise to an action under the CBA. *Livadas*, 512 U.S. at 124; *Thomas*, 308 F.3d at 893; *Graham,* 220 F.3d at 913; *Meyer*, 163 F.3d at 1050. There is no reasonable argument that López Prater's claims are based on any CBA or require interpretation of any provision of a CBA. *See Williams*, 582 F.3d at 874.

Third, Hamline has tacitly conceded that its preemption argument is frivolous. It brought a motion to dismiss, mentioned section 301 preemption as its basis for removal, but then failed to raise complete preemption as a basis for dismissal of any claims. Hamline's omission of any preemption argument in its motion underscores the point: Hamline's removal was and is clearly foreclosed by the relevant case law.

López Prater therefore respectfully requests that the Court allow López Prater to submit an affidavit detailing her costs and attorney's fees incurred as a result of Hamline's removal of the present case, and award those which the Court finds reasonable.

## CONCLUSION

For the foregoing reasons, López Prater respectfully requests the Court grant her motion to remand and award her costs and reasonable attorney's fees.

Respectfully Submitted:

Dated: 3-15-2023

/s/ David H. Redden
David H. Redden, #391496
Nicholas G. B. May, #287106
Adam A. Gillette, #328352
Attorneys for Erika López Prater
**FABIAN MAY & ANDERSON, PLLP**
1625 Medical Arts Building
825 Nicollet Mall
Minneapolis, MN 55402
Telephone: (612) 353-3340
nmay@fmalawyers.com
dredden@fmalawyers.com
agillette@fmalawyers.com