UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Erika López Prater, Ph.D., | ) | Court File No. 23-CV-00505 |
| | ) | (KMM-DJF) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ANSWER TO COMPLAINT** |
| Trustees of the Hamline University of | ) | |
| Minnesota, | ) | |
| | ) | |
| Defendant. | ) | |

NOW COMES Defendant Trustees of the Hamline University of Minnesota ("Hamline University" or "Defendant"), and hereby submits its Answer and Affirmative Defenses to Plaintiff Erika López Prater, Ph.D.'s Complaint as follows:

1. Plaintiff Erika Lopez Prater, Ph.D. ("Lopez Prater"), resides in Minnesota.

**ANSWER:** Based upon information and belief, Hamline University admits the allegations of Paragraph 1 of the Complaint.

2. Defendant Trustees of the Hamline University of Minnesota ("Hamline") operates the private liberal arts college Hamline University in St. Paul, Minnesota. Hamline is governed by its independent Board of Trustees. Hamline holds itself out as welcoming all religious persuasions, and as being non-sectarian in both its admissions practices and the content of its courses.

**ANSWER:** Hamline University admits that Defendant Trustees of the Hamline University of Minnesota ("Hamline University") operates the private liberal arts college Hamline University in St. Paul, Minnesota. Hamline University further admits that

Hamline University is governed by its independent Board of Trustees. Hamline University affirmatively alleges that it is welcoming of all religious persuasions, is non-sectarian in its admissions practices, and does not discriminate in the contents of its courses or otherwise. Hamline University denies all remaining allegations set forth in this paragraph.

3.      Lopez Prater is an academic with a Master of Arts (2010) and a Doctorate (2019) in Contemporary Art History from the University of Minnesota. Lopez Prater has served as a Visiting Assistant Professor and/or Lecturer for numerous art history classes at multiple colleges in Minnesota and Western Wisconsin, including Macalester College, University of Wisconsin Stout, Minneapolis College of Art and Design, University of Wisconsin - River Falls, Century College, and the University of Minnesota. These art history classes included the study of art in various timeframes and in various geographic areas.

**ANSWER:**   Based upon information and belief, Hamline University admits the allegations of Paragraph 3 of the Complaint.

4.      On June 28, 2022, Hamline hired Lopez Prater as an Undergraduate Adjunct in its College of Liberal Arts for the fall 2022 term. Lopez Prater was assigned to teach the fall 2022 class ARTH1100 - World Art, a four-credit course examining the importance of art as a cultural expression across time and from a global perspective. Goals for the class included gaining a broader understanding and appreciation of intellectual and cultural activity, and developing knowledge and understanding of diverse perspectives, global awareness, and other cultures. The class challenged students to analyze the style, subject, and patronage of works of art, and explore art's relationship to religion, ideology, society

and economy, political change, gender roles, and the interaction of cultures.

**ANSWER:** Hamline University admits that it hired Lopez Prater by an appointment letter as an Undergraduate Adjunct in its College of Liberal Arts for the fall 2022 term. Hamline University further admits that Lopez Prater was assigned to teach the fall 2022 class ARTH1100 - World Art, a four-credit course. Hamline University denies all remaining allegations set forth in this paragraph.

5.      Undergraduate courses on world art regularly include the viewing, study, and discussion of art containing images of various religious personages and iconography, including images of Christ, the Buddha, the Prophet Muhammad, and other religious figures. Throughout history, adherents to various religions, or sects within those religions, have taken exception to creating or viewing these and other images. Though not Muslim herself, Lopez Prater knew, for example, that some Muslims-though not all-object to the creation or viewing of art containing images of the Buddha or the Prophet Muhammad.

**ANSWER:** Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

6.      Because the class would, by its very nature, include discussion of religious traditions and displays of religious art, Lopez Prater stated the following in her course syllabus:

> I aim to affirm students of all religious observances and beliefs in the content of the course. Additionally, this course will introduce students to several religious traditions and the visual cultures they have produced historically. This includes showing and discussing both representational and non-representational depictions of holy figures (for example, the Prophet Muhammad, Jesus Christ, and the Buddha). If you have any questions or concerns about either missing class for a religious observance

3

or the visual content that will be presented, please do not hesitate to contact me.

Students who anticipate religious observance may affect their class attendance or participation must:

- Inform the instructor in writing prior to the anticipated absences(s) preferably at the beginning of the course.
- Meet with the instructor to arrange a plan to complete the student's academic responsibilities of the course.

**ANSWER:**   Hamline University states that Lopez Prater's written course syllabus is a written document, which speaks for itself. To the extent that an answer is required, Hamline University denies the allegations in this paragraph to the extent that they are inconsistent with the written course syllabus. Hamline University lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the same.

7.      Lopez Prater shared the syllabus with her supervisor Allison Baker ("Baker"), department chair of Hamline's Art and Digital Media Department, before finalizing it. After receiving and reviewing the syllabus, Baker did not make any changes to Lopez Prater's statement in the syllabus and did not express any concern about Lopez Prater displaying depictions of the Prophet Muhammad.

**ANSWER:**   Paragraph 7 of Plaintiff's Complaint is a written document, which speaks for itself, and must be read in its entirety. Hamline University denies any allegations that are inconsistent therewith. Hamline University affirmatively states that Baker did not require Plaintiff to submit a syllabus for approval and denies the remaining allegation in this paragraph.

8.     Lopez Prater also submitted the syllabus to Hamline. Hamline made no changes to Lopez Prater's statement and did not express any concern about Lopez Prater displaying depictions of the Prophet Muhammad as part of the class. Hamline did not inform Lopez Prater that displaying images of the Prophet Muhammad as part of the class was improper in any way.

**ANSWER:**   Paragraph 8 of Plaintiff's Complaint is a written document, which speaks for itself, and must be read in its entirety. Hamline University denies any allegations that are inconsistent therewith. Hamline University affirmatively states that Baker did not require Plaintiff to submit a syllabus for approval and denies the remaining allegation in this paragraph.

9.     After providing the syllabus to Baker and Hamline, Lopez Prater distributed the syllabus to students the first day of class. While providing the syllabus, Lopez Prater instructed the students to refer to the syllabus to understand course content and expectations. Lopez Prater also went over the syllabus thoroughly in class. Lopez Prater also uploaded the syllabus to the course website so the students could access it at any time. Lopez Prater brought extra copies of the syllabus to future classes to hand to students who enrolled in the course after the first day and, again, instructed them to review it.

**ANSWER:**   Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

10.     Students knew or should have known that images of the Prophet Muhammad would be shown during the class for educational reasons. Students also knew or should have known that they could avoid viewing those images if they so desired.

**ANSWER:**   Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

11.   Students further knew or should have known that if their religious observance might affect their participation in class, Lopez Prater wished to be notified in advance. Students had ample opportunity to raise any concerns with Lopez Prater about religious imagery that would be shown in class. None did.

**ANSWER:**   Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

## I.   HAMLINE OFFERS LOPEZ PRATER AN OPPORTUNITY TO TEACH A SPRING SEMESTER CLASS.

12.   On September 21, 2022, Baker emailed Lopez Prater and asked if Lopez Prater was interested in teaching a contemporary art class in the spring. Lopez Prater replied in the affirmative. Baker responded that "[m]y students in your classes have said nothing but wonderful things so we would really love to have you back in the Spring!"

**ANSWER:**   The written communications referenced in Paragraph 12 of the Complaint speak for themselves and must be read in their entirety.   Hamline University lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the same.

13.   Baker and Lopez Prater thereafter discussed the schedule for the spring contemporary art class, and the class was subsequently listed by Hamline as a course offering in the spring semester.

**ANSWER:**   The written communications referenced in Paragraph 13 of the

Complaint speak for themselves and must be read in their entirety. Hamline University further asserts that Plaintiff was subject to a collective bargaining agreement and that no appointment letter was ever issued to Plaintiff for a Spring 2023 course.

## II. DESPITE BEING WARNED IN THE CLASS SYLLABUS AND VERBALLY ON THE DAY OF CLASS THAT AN IMAGE OF THE PROPHET MUHAMMAD WOULD BE SHOWN, A STUDENT FAILS TO EXCUSE HERSELF, VOLUNTARILY VIEWS THE IMAGE, AND THEN COMPLAINS.

14.     During an online class on October 6, 2022, as part of a unit on Islamic Art, Lopez Prater displayed the painting *The Prophet Muhammad Receiving Revelation from the Angel Gabriel.* The painting dates to the year 1307 and is part of the Ilkhanid manuscript *Jami' al tawarikh* ("Compendium of Histories"), made by Rashid-al-Din Hamadani (a Muslim) in Tabriz, Iran. This artwork was commissioned by a Sunni Muslim King in Iran. It is undisputed that the painting was made by a Muslim for Muslims. The painting is part of a cycle of illustrations narrating and commemorating the Prophet Muhammad's life. The painting is considered by art historians to be a global artistic masterpiece. It is undisputed that the painting was made with great reverence for the Prophet Muhammad and Islam and could never be accurately labeled "Islamophobic."

**ANSWER:**  Hamline University admits that Lopez Prater displayed visual depictions of the Prophet Muhammad during an online class on October 6, 2022. Hamline University lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the same.

15.     In the same class, Lopez Prater displayed the painting, *Muhammad, shown with a veiled face and halo, at Mount Hira.* This painting is a 16th century depiction of the

7

Siyer-I Nebi, a Turkish epic about the life of the Prophet Muhammad. The painting shows the Prophet Muhammad with a full-body veil with only his hands showing. There is no dispute that this painting was made with great reverence for the Prophet Muhammad and cannot be accurately labeled "Islamophobic."

**ANSWER:** Hamline University admits that Lopez Prater displayed visual depictions of the Prophet Muhammad during an online class on October 6, 2022. Hamline University lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the same.

16.     Lopez Prater showed the paintings for a plainly educational purpose: to discuss the varied historical ways in which the art of Islam has chosen to represent holy personages, and the broader phenomena within Abrahamic traditions of a contested and inconsistent relationship to depicting the divine. Professors of art history across the world, including Muslim professors, value and show these paintings and other similar images of the Prophet Muhammad in their classes, including in educational spaces within Muslim-majority countries. The paintings Lopez Prater showed are considered canonical by professors of Islamic art, on par with canonical works of art from Western artists such as Leonardo da Vinci's *The Last Supper* and Michelangelo's Sistine Chapel ceiling. *See, e.g.,* Christiane Gruber, *Islamic paintings of the Prophet Muhammad are an important piece of history - here's why art historians teach them,* The Conversation, Jan. 9, 2023, at http://theconversation.com/islamic-paintings-of-the-prophet-muhammad-are-an-important-piece-of-history-heres-why-art-historians-teach-them-197277.

**ANSWER:** Hamline University lacks knowledge and information sufficient to

form a belief as to the truth of these allegations and, therefore, denies the same.

17.     Lopez Prater displayed both paintings in several classes she had taught at other institutions. These paintings and other images of the Prophet Muhammad are displayed in museums across the world and are included in many textbooks about art history or history in general. In addition to the paintings' artistic merit, they are historically, artistically, religiously, socially, and-most importantly-educationally significant.

**ANSWER:**  Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

18.     Before advancing to the presentation slides containing the images, Lopez Prater notified students that she was about to show representational images of the Prophet Muhammad. Lopez Prater also explained the paintings' educational and artistic significance. Students viewing the online class had ample warning about the paintings. Students viewing the online class also had ample opportunity to turn away from their computer screens, turn their screens away from them, turn off their screens, or even leave their rooms before the Lopez Prater advanced to the slides containing the images. Then, after advancing to the slides containing the images, Lopez Prater provided verbal descriptions of the images and those that followed so students who chose not to look at them would know when she had moved on. During class, neither Lopez Prater, nor any student in the class, made any inappropriate, rude, or discriminatory statements about the paintings or Islam.

**ANSWER:**  Hamline University denies Lopez Prater notified students that she was about to show representational images of the Prophet Muhammad before they were

displayed on the presentation slides. Hamline University further denies students viewing the online class had ample warning about the paintings or opportunity to turn away from their computer screens, turn their screens away from them, turn off their screens, or even leave their rooms before the Lopez Prater displayed the slides containing the images. Hamline University admits Lopez Prater provided verbal descriptions of the images of the Prophet Muhammad. Hamline University lacks **knowledge and information sufficient to form a belief as to the truth of the remaining allegations** and, therefore, denies the same.

19.     Despite being warned about the depictions of the Prophet Muhammad in the syllabus and on the day of class, and despite having ample opportunity to not view the paintings, a Muslim student reportedly viewed the paintings and was reportedly offended by them.

**ANSWER:**   Hamline University admits only that a Muslim student reportedly viewed the paintings and was reportedly offended by them. Hamline University denies the remaining allegations in Paragraph 19.

20.     As the October 6 class ended, the Muslim student, Aram Wedatalla ("Wedatalla"), who is the president of Hamline's Muslim Student Association, stayed on the video meeting after the other students left and expressed outrage to Lopez Prater that images of the Prophet Muhammad were displayed. Lopez Prater explained the educational purpose for displaying the images. Wedatalla was unreceptive to Lopez Prater's explanation.

**ANSWER:**   Hamline University lacks **knowledge and information sufficient to form a belief as to the truth of these allegations** and, therefore, denies the same.

21.     During their conversation, Wedatalla did not suggest that Lopez Prater had surprised students by showing the paintings. Instead, Wedatalla was enraged that Lopez Prater showed the images at all, to anyone. By her statements and actions, Wedatalla wanted to impose her specific religious views on Lopez Prater, non-Muslim students, and Muslim students who did not object to images for the Prophet Muhammad-a privilege granted to no other religion or religious belief at Hamline.

**ANSWER:**   Hamline University denies the allegations contained in Paragraph 21 of the Complaint.

22.     After the conversation ended, Lopez Prater emailed Baker to explain what happened in class. Lopez Prater also alerted Baker that Wedatalla might contact Baker. Baker responded via email, "I'm sorry that happened and it sounded like you did everything right. I believe in academic freedom so you have my support but thank you for the heads up."

**ANSWER:**   Paragraph 22 of the Complaint references written documents which speak for themselves, and must be read in their entirety. Hamline University denies any allegations inconsistent therewith, as well as the remaining allegations set forth in this paragraph.

23.     On October 7, 2022, Baker notified Lopez Prater that Wedatalla had complained to Marcela Kostihova ("Kostihova"), Dean of Hamline's College of Liberal Arts. Baker told Lopez Prater that sending Wedatalla an email apologizing for making her feel uncomfortable would be a good idea, but not to backpedal on Lopez Prater's right to academic freedom under Hamline policy.

11

**ANSWER:**   Paragraph 23 of the Complaint references written documents which speak for themselves, and must be read in their entirety. Hamline University denies any allegations inconsistent therewith, as well as the remaining allegations set forth in this paragraph.

24.     Lopez Prater drafted an email and provided it to Baker for review. After receiving Baker's suggested edits, Lopez Prater sent the email apology to Wedatalla on October 8, 2022. In the email, Lopez Prater apologized that the images made Wedatalla uncomfortable. Lopez Prater also told Wedatalla that Lopez Prater did not intend to make anyone upset or to disrespect them. Lopez Prater pointed out that she had given students ample time to choose their level of engagement, including turning off the video on their computers or walking away. Lopez Prater again explained the educational reasons for displaying the images. Lopez Prater highlighted that they were shown for purposes of demonstrating the artistic diversity within Islam itself. Lopez Prater further wrote:

> I do hope we can both agree that it is important to teach diversity, and by definition, diversity involves bringing contradicting, uncomfortable, and coexisting truths into conversation with each other.

**ANSWER:**   The allegations contained in Paragraph 24 of the Complaint concern written documents, which speak for themselves and must be read in their entirety.  Hamline University denies any allegations that are inconsistent therewith.   Hamline University admits that Plaintiff and Baker corresponded regarding a written apology, and denies the remaining allegations of Paragraph 24 of the Complaint.

25.     Wedatalla did not respond to Lopez Prater's email, but reportedly shared Lopez Prater's email with others in furtherance of her campaign to impose her religious

beliefs and a discriminatory ban on representations of the Prophet Muhammad at Hamline.

**ANSWER:**  Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

26.    On or about October 10, 2022, Lopez Prater had two discussions with Kostihova. During the first discussion, Kostihova told Lopez Prater that it was not a good idea for her to have shown images of the Prophet Muhammad. Kostihova stated that a Muslim person had described Lopez Prater's actions as "shitting on Islam," and said the closest analogy she could come up with was using the "n word" in class. Kostihova reported that there had a been a large outcry within the Muslim Student Association as well as Muslim faculty and staff, and that Muslim staff were threatening to resign. Kostihova recommended that Lopez Prater apologize in class. Lopez Prater then explained to Kostihova what had happened, why the images were displayed, and the steps Lopez Prater took to accommodate Muslim students who did not wish to see the images.

**ANSWER:**  Hamline University admits that Plaintiff and Kostihova had two separate conversations on October 10, 2022, but denies Plaintiff's characterization of the same as alleged in Paragraph 26 of the Complaint.

27.    In their second conversation, Lopez Prater expressed concern to Kostihova about the issue getting out of hand and the damage it may cause to her career. Lopez Prater explained that excluding these Muslim paintings of the Prophet Muhammad would be discriminatory, in that it would privilege the religious views of Muslims who forbid depictions of the Prophet Muhammad over the historical record and people of other

religious views, including Muslims, who do not hold that such images are forbidden.

**ANSWER:** Hamline University admits that Plaintiff and Kostihova had two separate conversations on October 10, 2022, but denies Plaintiff's characterization of the same as alleged in Paragraph 27 of the Complaint.

28.    On October 11, 2022, in an effort toward reconciliation, Lopez Prater apologized to her class and asked the students if they would like to discuss the matter further. She was met with silence. She therefore told the students that if they were not comfortable discussing it during class, she was open to continuing the conversation when they wished. None did.

**ANSWER:** Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

29.    Despite the multiple apologies, on or about October 24, 2022, Baker notified Lopez Prater that the class Lopez Prater had been scheduled to teach during the spring semester was being cancelled and that Lopez Prater's contract would not be renewed. Baker wrote:

> We have deeply appreciated the breadth of knowledge you have brought to Hamline this semester but as a department we need to make a spring semester change and will no longer be able to offer the contemporary art history class online as we had previously discussed.

**ANSWER:** The allegations contained in Paragraph 29 of the Complaint concern written documents, which speak for themselves and must be read in their entirety. Hamline University denies any allegations that are inconsistent therewith. Hamline University admits that Lopez Prater was subject to a collective bargaining agreement and not offered

an appointment letter for a Spring 2023 course.

30.     The next day, Lopez Prater responded to Baker's email, writing, "I imagine that this need to change plans next semester is related to the events that stemmed from my class a few weeks ago." Baker never responded or attempted to disabuse Lopez Prater of her conclusion.

**ANSWER:**   The allegations contained in Paragraph 29 of the Complaint concern written documents, which speak for themselves and must be read in their entirety.  Hamline University denies any allegations that are inconsistent therewith.

31.     Lopez Prater was prepared to finish out her World Art course and leave Hamline quietly. Hamline and Everett had other ideas.

**ANSWER:**   Hamline University lacks knowledge and information sufficient to form a belief as to the truth of the allegations with respect to Plaintiff's state of mind and, therefore, denies the same.  Hamline University denies the remaining allegations contained in Paragraph 31 of the Complaint.

32.     Instead of recognizing that Lopez Prater had displayed the images of the Prophet Muhammad for a proper academic purpose, Hamline decided to impose Wedatalla's interpretation of Islam on all Hamline employees and students. Hamline designated its Associate Vice President of Inclusive Excellence, David Everett, Ph. D. ("Everett"), as the person to communicate Hamline's imposition of religious beliefs.

**ANSWER:**   Hamline University denies the allegations contained in Paragraph 32 of the Complaint.

33.     On or about November 7, 2022, Everett engaged in libel on Hamline's behalf,

publicly defaming Lopez Prater via email to all Hamline employees and students. The email, sent in the course and scope of Everett's employment with Hamline, states in relevant part:

> Several weeks ago, Hamline administration was made aware of an incident that occurred in an online class. <u>Certain actions taken in that class were undeniably inconsiderate, disrespectful and Islamophobic.</u> While the intent behind those actions may not have been to cause harm, it came at the expense of Hamline's Muslim community members. While much work has been done to address the issue in question since it occurred, <u>the act itself was unacceptable.</u>
>
> * * *
>
> I want to make clear: isolated incidents such as we have seen define neither Hamline nor its ethos. They clearly do not meet community standards or expectations for behavior. We will utilize all means at our disposal, up to and including the conduct process, to ensure the emotional health, security and well-being of all members of our community.

(Emphasis added.)

**ANSWER:**   The allegations contained in Paragraph 33 of the Complaint concern written documents, which speak for themselves and must be read in their entirety.  Hamline University denies any allegations that are inconsistent therewith.   Further answering, Paragraph 33 of the Complaint sets forth legal conclusions, which Hamline University denies and have been dismissed by the Court.

34.    At the time his November 7 email was sent, Everett and Hamline knew and recklessly disregarded the following facts: a) the images Lopez Prater displayed were not created out of any prejudice toward Islam or Muslims; b) Lopez Prater displayed the images for a proper educational purpose and within a proper artistic and historical context; c) Lopez Prater did not display the paintings out of any prejudice toward Islam or Muslims;

16

d) Lopez Prater provided the students ample warning that the paintings would be shown, while explaining the educational purpose for doing so; and e) showing these images plainly fell within Lopez Prater's right to academic freedom, as set forth in Section 3.1.2 of Hamline's Faculty Handbook.

**ANSWER:**   Paragraph 34 of the Complaint sets forth legal conclusions, which Hamline University denies and have been dismissed by the Court. Hamline University denies the remaining allegations set forth in this paragraph.

35.    Indeed, contrary to Everett's false assertions in his email, both the images and Lopez Prater's conduct in showing them were undeniably not "Islamophobic." Hamline cannot point to any serious academic work suggesting the paintings or Lopez Prater's display of them in class were "Islamophobic." Multiple Muslim scholars and Muslim advocacy organizations have since publicly stated what was always obvious: neither the paintings nor Lopez Prater's conduct were "Islamophobic."

**ANSWER:**   Hamline University denies the allegations set forth in this paragraph. Hamline University affirmatively asserts that it addressed certain of these allegations in its January 17, 2023 public statement.  Further answering, Paragraph 35 of the Complaint sets forth legal conclusions, which Hamline University denies and have been dismissed by the Court.

36.    Everett's statement on behalf of Hamline that Lopez Prater's conduct during the October 6 class was "undeniably inconsiderate, disrespectful and Islamophobic" is thus false and defamatory.

**ANSWER:**   The allegations contained in Paragraph 36 of the Complaint concern written documents, which speak for themselves and must be read in their entirety.  Hamline University denies any allegations that are inconsistent therewith.   Further answering, Paragraph 33 of the Complaint sets forth legal conclusions, which Hamline University denies and have been dismissed by the Court.

37.     While Everett's email did not name Lopez Prater, it was obvious from recent events that Lopez Prater was the target of Everett's libelous email. Anyone with a little time and interest could easily discover that Everett was referring to Lopez Prater.

**ANSWER:**   Hamline University admits that Everett's email did not name Lopez Prater. Hamline University further asserts Paragraph 37 of the Complaint also sets forth legal conclusions, which Hamline University denies and have been dismissed by the Court. Hamline University denies the remaining allegations set forth in this paragraph.

38.     Lopez Prater, who saw the email and knew it referred to her, suffered immediate, severe, and lasting emotional distress, including various physical manifestations of that distress. Lopez Prater also experienced intense anger that Everett, who had never met or spoken with her, would speak about her in those terms in an email to every Hamline employee.

**ANSWER:**   This paragraph sets forth legal conclusions and does not require an answer. To the extent that an answer is required, Hamline University denies. Hamline University denies the remaining allegations set forth in this paragraph.

39.     The defamatory elements of Everett's email have since been published far and wide across the world and tied specifically to Lopez Prater.

**ANSWER:**   Paragraph 39 of the Complaint sets forth legal conclusions, which Hamline University denies and have been dismissed by the Court. With respect to the remaining allegations, Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

40.     On or about November 11, 2022, Kostihova informed Lopez Prater that Hamline's student newspaper, *The Oracle,* was interviewing people about the events in Lopez Prater's October 6 class and intended to publish an article about it. Kostihova told Lopez Prater that *The Oracle* intended to omit her name. Given that Lopez Prater was the only art historian on campus teaching the only art history class that semester, it would be clear to anyone who read the article that she was the professor at the center of the story.

**ANSWER:**   The allegations contained in Paragraph 40 of the Complaint concern written documents, which speak for themselves and must be read in their entirety.  Hamline University denies any allegations that are inconsistent therewith.  Hamline University denies the remaining allegations contained in Paragraph 40 of the Complaint.

41.     The next day, Lopez Prater learned that Hamline instructed its faculty members to not discuss the matter or involve themselves in it. Lopez Prater noticed that the faculty members in her department stopped reaching out to her and seemed to be avoiding her.

**ANSWER:**   Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

42.     On November 18, 2022, *The Oracle* published a staff editorial, including on its public website, entitled "Incidents of hate and discrimination." *See*

https://hamlineoracle.com/_10652/opinion/staff-ed-incidents-of-hate-and-discrimination/.

The student writers parroted the defamatory assertion in Everett's November 7 email that Lopez Prater's conduct was "Islamophobic," and equated Lopez Prater's conduct with a recent "act of homophobia." Further parroting Hamline, the editorial declared that Lopez Prater's conduct had "harmed and traumatized" individuals in the Islamic community, notwithstanding the obvious lack of any physical injury or conduct by Lopez Prater that would reasonably give rise to any lasting shock.

**ANSWER:**  Hamline University admits that *The Oracle* published a staff editorial, including on its public website, entitled "Incidents of hate and discrimination." Hamline University further states that *The Oracle* staff editorial speaks for itself. To the extent that an answer is required, Hamline University denies the allegations in this paragraph to the extent that they are inconsistent with *The Oracle* staff editorial. Hamline University further asserts that this paragraph sets forth legal conclusions and does not require an answer. To the extent that an answer is required, Hamline University denies. Hamline University denies the remaining allegations set forth in this paragraph.

43.    Later that day, Lopez Prater sent an email to Kostihova and Baker calling out Everett's email as defamatory and recounting why the paintings were shown and the efforts made to be respectful to any Muslim students who may not want to see them. Lopez Prater decried the lack of any due process and noted that news of the events in her class were being disseminated in a way that denied her any recourse to defend herself.

**ANSWER:**  The allegations contained in Paragraph 43 of the Complaint concern written documents, which speak for themselves and must be read in their entirety.  Hamline

University denies any allegations that are inconsistent therewith. To the extent that an answer is required, Hamline University denies the same, as well as the remaining allegations set forth in this paragraph.

44.     Lopez Prater further asked in her email to Baker and Kostihova that *The Oracle* not run its intended article, and wrote:

> This situation has gotten out of control. False, defamatory statements and innuendo have been directed against me and they must stop. I have been given no opportunity to refute these public allegations of Islamophobia. Additionally, a future class has been stripped from me, faculty have been advised not to speak with me about the incident, and the general attitude toward me on campus has become toxic.
>
> * * *
>
> Although I feel that I have been dealt with and impugned unjustly, my intention has always been and remains to be ameliorative and conciliatory. I want to be constructive rather than inflammatory. However, I simultaneously recognize vividly that these ongoing events could dramatically impact my career ....

**ANSWER:**   The allegations contained in Paragraph 44 of the Complaint concern written documents, which speak for themselves and must be read in their entirety. Hamline University denies any allegations that are inconsistent therewith. To the extent that an answer is required, Hamline University denies the same, as well as the remaining allegations set forth in this paragraph.

45.     Lopez Prater's pleas fell on deaf ears. On December 6, 2022, *The Oracle* published an article, including on its public website, about the events in Lopez Prater's October 6th class, entitled "Who Belongs?" *See* https://hamlineoracle.com/10750/news/who-belongs/.

**ANSWER:**   Hamline University admits that *The Oracle* published an article,

including on its public website, entitled "Who Belongs?" Hamline University lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the same.

46.     The article quoted and rebroadcast Everett's knowingly false and defamatory statement that Lopez Prater's conduct was "undeniably inconsiderate, disrespectful and Islamophobic."

**ANSWER:**   Hamline University states that *The Oracle* article speaks for itself. To the extent that an answer is required, Hamline University denies the allegations in this paragraph to the extent that they are inconsistent with *The Oracle* article. Further answering, Paragraph 46 of the Complaint sets forth legal conclusions, which Hamline University denies and have been dismissed by the Court.

47.     The article also reported the defamatory statement of Patti Kersten ("Kersten"), Hamline's Dean of Students, that Lopez Prater's conduct was "an act of intolerance."

**ANSWER:**   Hamline University states that *The Oracle* article speaks for itself. To the extent that an answer is required, Hamline University denies the allegations in this paragraph to the extent that they are inconsistent with *The Oracle* article. Further answering, Paragraph 47 of the Complaint sets forth legal conclusions, which Hamline University denies and have been dismissed by the Court.

48.     Nur Mood ("Mood"), Assistant Director of Social Justice Programs and Strategic Relations, was quoted saying that showing the historical Muslim paintings was "something that in a million years, I never expected ... would happen here at Hamline."

22

**ANSWER:**   Hamline University states that *The Oracle* article speaks for itself. To the extent that an answer is required, Hamline University denies the allegations in this paragraph to the extent that they are inconsistent with *The Oracle* article. Hamline University denies the remaining allegations set forth in this paragraph.

49.     Everett told *The Oracle,* "In lieu [sic] of this incident, it was decided it was best that this faculty member was no longer part of the Hamline community."

**ANSWER:**   Hamline University states that *The Oracle* article speaks for itself. To the extent that an answer is required, Hamline University denies the allegations in this paragraph to the extent that they are inconsistent with *The Oracle* article. Hamline University denies the remaining allegations set forth in this paragraph.

50.     At no point did Everett, Mood, or Kersten talk to Lopez Prater about the class, the paintings, or the events giving rise to Wedatalla's complaint.

**ANSWER:**   Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

51.     While the article did not name Lopez Prater, there was no mystery as to her identity. Lopez Prater was the only art historian at Hamline teaching the only art history class offered by Hamline. Anyone in the world with time and interest could easily determine Lopez Prater's identity. For example, in an article dated January 5, 2023, a columnist for *The American Spectator* magazine identified Lopez Prater as the professor at issue simply by reviewing Hamline's publicly available undergraduate course listings for fall 2022. *See* Bruce Bawer, *Woke College Fires Adjunct Art Instructor for Showing Illustrations of Muhammad,* The American Spectator, Jan. 5, 2023, at

http://spectator.org/woke-college-fires-adjunct-art-instructor-for-showing-illustrations-of-muhammed/.

**ANSWER:**   Hamline University admits that the article did not name Lopez Prater. Hamline University lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the same.

52.     When *The Oracle's* December 6 article was published, Lopez Prater was still teaching her class and finishing out the semester. The disclosure that Lopez Prater was being cast out from the "Hamline community" because she showed historical paintings of the Prophet Muhammad during her October 6th unit on Islamic art contributed significantly to Lopez Prater's feelings of isolation, embarrassment, lack of support, humiliation, and extreme emotional distress.

**ANSWER:**   Hamline University admits that Lopez Prater was still employed by Hamline University as of December 6, 2022. Hamline University lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the same.

53.     The same day it ran the "Who Belongs?" article, *The Oracle* also published a letter to the editor from Hamline Professor and Chair of the Department of Religion, Mark Berkson, Ph.D. ("Berkson"), entitled "Letter to the Editor on Islamophobia Accusations." *See* http://hamlineoracle.com/10740/opinion/commetary-the-debate-over-representations-of-muhammad/. Berkson's letter defended Lopez Prater, providing a reasoned counterpoint to the discriminatory and defamatory invective perpetrated by Hamline. Berkson's letter-unlike any Hamline communications to date-accurately

described events in Lopez Prater's October 6th class, explained the pedagogical value of the paintings shown, refuted the administration's knowingly false assertions that showing an image of the Prophet Muhammad is categorically "Islamophobic" and "an act of intolerance," and set out the disturbing implications of banning such images from the classroom.

**ANSWER:**   Hamline University admits *The Oracle* published a letter to the editor from Berkson entitled "Letter to the Editor on Islamophobia Accusations." Hamline University states that Berkson's letter to the editor speaks for itself. To the extent that an answer is required, Hamline University denies the allegations in this paragraph to the extent that they are inconsistent with the letter to the editor. Further answering, Paragraph 53 of the Complaint sets forth legal conclusions, which Hamline University denies and have been dismissed by the Court.

54.    Hamline contacted Berkson and told him he should not have submitted his letter. Shortly after publishing the letter, *The Oracle* removed the letter from *The Oracle's* website. In response to a growing national outcry over its actions, *The Oracle* later published a staff editorial on December 25, 2022, contending that Berkson's letter was removed from its website because it had somehow caused "harm," and because *The Oracle* "will not participate in conversations where a person must defend their lived experience and trauma as topics of discussion or debate." *Staff ed: Journalism, minimizing harm and trauma,* The Oracle, Dec. 25, 2022, at https://hamlineoracle.com/10776/opinion/staff-ed-journalism-minimizing-harm-and-trauma/.

**ANSWER:**   Hamline University admits that *The Oracle* removed Berkson's letter

to the editor. Hamline University further admits that *The Oracle* published a staff editorial on December 25, 2022. Hamline University states that December 25, 2022 staff editorial speaks for itself. To the extent that an answer is required, Hamline University denies the allegations in this paragraph to the extent that they are inconsistent with the staff editorial. Hamline University lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the same.

55.     On December 8, 2022, Everett hosted an in-person "Community Conversation" on Hamline's campus in which several defamatory statements were made against Lopez Prater by Jaylani Hussein ("Hussein"), Executive Director of the Minnesota chapter of the Council on American-Islamic relations ("CAIR-MN").

**ANSWER:**   Hamline University admits that on December 8, 2022, there was an in-person "Community Conversation" on Hamline University's campus. Hamline University further asserts that this paragraph sets forth legal conclusions and does not require an answer. To the extent that an answer is required, Hamline University denies. Hamline University denies the remaining allegations set forth in this paragraph.

56.     During the "Community Conversation," Hussein falsely asserted that Lopez Prater showed the images of the Prophet Muhammad for no reason other than to provoke, offend, and hurt Muslim students, and that doing so was "Islamophobic." Hussein also stated that Lopez Prater showed the paintings because she does not value Muslims the same as other minorities. Hussein made statements to the effect that non-Muslims do not have the right or knowledge to talk about the range of Islamic beliefs, regardless of their education or expertise.

**ANSWER:**   Hamline University admits that the "Community Conversation" was recorded and denies any allegations inconsistent therewith.   Hamline University affirmatively asserts that Hussein is not an employee or agent of Hamline University and his statements were not dictated by Hamline University.

57.   Berkson, who attended the "Community Conversation," respectfully attempted to question Hussein's false and discriminatory premises. When Berkson did so, Baker and Everett placed their hands on his shoulders and told him to stop. Berkson nevertheless spoke up: "When you say 'trust Muslims on Islamophobia,' what does one do when the Islamic community itself is divided on an issue? Because there are many Muslim scholars and experts and art historians who do not believe that this was Islamophobic."

**ANSWER:**   Hamline University admits that the "Community Conversation" was recorded and denies any allegations inconsistent therewith.

58.   Hussein angrily responded to Berkson, loudly speaking over him in open contempt, and angrily equated showing depictions of the Prophet Muhammad to the crime of pedophilia, as well as Nazism and white supremacy. Hussein also alluded to the possibility of a violent Islamic response, pointing to the 2015 murders at the offices of the *Charlie Hebdo* newspaper in France, where several people were killed in response to the publication of satirical cartoons depicting the Prophet Muhammad. Hussein referred to the images Lopez Prater showed in class, which, again, were reverentially made by Muslims for Muslims, as "racist" and "disgusting," and called for them to be banned from campus.

**ANSWER:**   Hamline University admits that the "Community Conversation" was recorded and denies any allegations inconsistent therewith.

59.     At no point did Everett or any other Hamline administrator interrupt Hussein, address his allusion to violence, or allow Berkson to finish his questions. Instead, Everett and Hamline demonstrated their support and agreement with Hussein's defamatory statements regarding Lopez Prater and adopted them as their own.

**ANSWER:**   Hamline University admits that the "Community Conversation" was recorded and denies any allegations inconsistent therewith. Further answering, Paragraph 59 of the Complaint sets forth legal conclusions, which Hamline University denies and have been dismissed by the Court.

60.     In fact, Everett, in the scope of his employment, subsequently published a video of the "Community Conversation" to every Hamline employee, and possibly, others from his Hamline email address. The video Everett published includes Hussein's statements identified above.

**ANSWER:**   Hamline University admits that the "Community Conversation" was recorded, and subsequently circulated within aspects of the Hamline University community and denies any allegations inconsistent therewith. Hamline University further asserts that this paragraph sets forth legal conclusions and does not require an answer. To the extent that an answer is required, Hamline University denies. Hamline University denies the remaining allegations set forth in this paragraph.

61.     On December 9, 2022, the day after the "Community Conversation," Everett and Hamline President Fayneese Miller, Ph.D. ("Miller"), sent an email to all staff in which they falsely implied that Lopez Prater had somehow showed the images of the Prophet Muhammad disrespectfully.

**ANSWER:**   Hamline University admits that on December 9, 2022, Everett and Miller sent an email to certain members of Hamline University's staff, which is a written document that speaks for itself, and must be read in its entirety. Hamline University denies any allegations that are inconsistent therewith.  Hamline University denies the remaining allegations set forth in this paragraph.

62.     In the email, Everett and Miller asserted that they "do not suggest that some material be stricken from our classrooms and not shared with students." However, two paragraphs later, in a model of Orwellian doublethink, Everett and Miller stated that the historical paintings containing images of the Prophet Muhammad should have been stricken from Lopez Prater's classroom and not shared with students. They wrote:

> It is not our intent to place blame; rather, it is our intent to note that in the classroom incident-where an image forbidden for Muslims to look upon was projected on a screen and left for many minutes—respect for the observant Muslim students in that classroom should have superseded academic freedom.

(Emphasis added.)

**ANSWER:**   Hamline University admits that Everett and Miller's email is a written document that speaks for itself, and must be read in its entirety. Hamline University denies any allegations that are inconsistent therewith. Hamline University denies the remaining allegations set forth in this paragraph.

63.     Everett and Miller's statement that "respect for the observant Muslim students in that classroom should have superseded academic freedom" runs directly counter to Hamline's obligation to afford academic freedom to its faculty.

**ANSWER:**   Hamline University denies the allegations set forth in this paragraph.

64.     Lopez Prater's employment at Hamline was subject to the policies set forth in Hamline's Faculty Handbook ("Handbook"), last amended on May 14, 2021. *Available at* the https://drive.google.com/filed/d/149jcdSaZm4zuJqUQG7PJE2eyYMUj3HJl/view. Section 1.1 of the Handbook states that the policies contained in the Faculty Handbook apply to "all faculty members of Hamline University." Section 4 of the Handbook states that adjunct professors like Lopez Prater are included in the definition of faculty as "persons having appointment for the instruction of students. . . ."

**ANSWER:**   Hamline University admits that Lopez Prater's employment at Hamline was subject to the policies set forth in Hamline's Faculty Handbook ("Handbook"), among other things. Hamline University states that the Handbook speaks for itself and must be read in its entirety. Hamline University denies the allegations in this paragraph to the extent that they are inconsistent with the Handbook. Hamline University denies the remaining allegations set forth in this paragraph.

65.     Section 3.1 of the Faculty Handbook pertains to the academic freedom of all Hamline faculty. It states in relevant part:

> 3.1.2 All faculty members are entitled to freedom in the classroom in discussing their subject, but they should be careful not to introduce into their teaching controversial matter which has no relation to their subject.

**ANSWER:**   Hamline University states that the Handbook is a written document, which speaks for itself and must be read in its entirety. Hamline University denies the allegations in this paragraph to the extent that they are inconsistent with the Handbook. Hamline University denies the remaining allegations set forth in this paragraph.

66.     The paintings Lopez Prater displayed during the October 6 class were plainly

relevant to the subject of world art.

**ANSWER:**   Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

67.   Moreover, as Lopez Prater, numerous academics, and many others have pointed out since Lopez Prater's non-renewal, banning images of the Prophet Muhammad based on the Muslim majority view would privilege those forms of Islam who believe the images should not be shown to the detriment of other sects of Islam, and other religions, that do not ban such images. *See, e.g.,* Christiane Gruber, *An Academic Is Fired Over a Medieval Painting of the Prophet Muhammad,* New Lines Magazine, Dec. 22, 2022, at https://newlinesmag.com/   argument/academic-is-fired-over-a-rnedieval-painting-of-the-prophet-muhammad/; Amna Khalid, *Most of All, I am Offended as a Muslim,* The Chronical of Higher Education, Dec. 29, 2022, at https://www.chronicle.com/article/ost-of-all-i-am-offended-as-a_muslim. In other words, banning the images from class would be discriminatory.

**ANSWER:**   Hamline University expressly denies that it privileged any particular form of Islam.  Further answering, this paragraph sets forth certain legal conclusions that do not require an answer. To the extent that an answer is required, Hamline University denies the same. Hamline University lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies the same.

68.   The actions and statements of Hamline violated the Handbook's provisions related to academic freedom.

**ANSWER:**   Hamline University denies the allegations set forth in this paragraph.

69.     Following the decision to not renew Lopez Prater, Hamline hired a different adjunct instructor to teach a spring semester course entitled "Visual Constructions of Gender."

**ANSWER:**   Hamline University admits only that it hired an adjunct instructor to teach a spring semester course entitled "Visual Constructions of Gender." Hamline University denies the remaining allegations set forth in this paragraph.

70.     Lopez Prater was qualified to teach the course and had previously taught similar courses on art and gender at other institutions but was not asked to teach the spring course at Hamline.

**ANSWER:**   Hamline University lacks knowledge and information sufficient to form a belief as to the truth of these allegations and, therefore, denies the same.

## CAUSES OF ACTION

### COUNT I: RELIGIOUS DISCRIMINATION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT

71.     By reference hereto, Plaintiff incorporates the paragraphs above.

**ANSWER:**   Hamline University restates and incorporates by reference its answers to each paragraph of the complaint.

72.     The Minnesota Human Rights Act ("MHRA") states that it is the public policy of the state of Minnesota "to secure for persons in this state, freedom from discrimination" in employment because of religion. Minn. Stat. §363A.02(a)(l).

**ANSWER:**   Hamline University states that the MHRA speaks for itself. To the extent that an answer is required, Hamline University denies the allegations in this

paragraph to the extent that they are inconsistent with the MHRA. Hamline University further asserts that this paragraph sets forth legal conclusions and does not require an answer. To the extent that an answer is required, Hamline University denies. Hamline University denies the remaining allegations set forth in this paragraph.

73.     In furtherance of Minnesota's public policy, the MHRA provides that it is an unfair employment practice for an employer, because of religion, to refuse to hire a person, Minn. Stat. § 363A.08, subd. 2(1), or to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment. Id. § 363A.08, subd. 2(3).

**ANSWER:**   Hamline University states that the MHRA speaks for itself. To the extent that an answer is required, Hamline University denies the allegations in this paragraph to the extent that they are inconsistent with the MHRA. Hamline University further asserts that this paragraph sets forth legal conclusions and does not require an answer. To the extent that an answer is required, Hamline University denies. Hamline University denies the remaining allegations set forth in this paragraph.

74.     The MHRA's prohibition against religious discrimination extends to situations where an employee suffers an adverse employment action because the employee does not conform to the employer's religious expectations or preferences.

**ANSWER:**   This paragraph sets forth legal conclusions and does not require an answer. To the extent that an answer is required, Hamline University denies. Hamline University denies the remaining allegations set forth in this paragraph.

75.     The MHRA's prohibition against religious discrimination also extends to

situations where an employee suffers an adverse employment action because the employee is not of a particular religion or because of a discriminatory customer preference.

**ANSWER:**  This paragraph sets forth legal conclusions and does not require an answer. To the extent that an answer is required, Hamline University denies. Hamline University denies the remaining allegations set forth in this paragraph.

76.    Prior to Lopez Prater showing the two paintings in class, Hamline was satisfied with Lopez Prater's job performance. In fact, Hamline had offered Lopez Prater employment with Hamline for the 2023 spring semester.

**ANSWER:**  Hamline University denies the allegations set forth in this paragraph.

77.    Hamline, however, had an expectation that Lopez Prater would conform to the specific beliefs of a Muslim sect that believes it is forbidden to portray the image of the Prophet Muhammad. Lopez Prater did not conform to Hamline's expectation and instead showed two world-renowned artistically and historically significant images of the Prophet Muhammad to her art history class.

**ANSWER:**  Hamline University denies the allegations set forth in this paragraph.

78.    After learning that the images had been shown, Hamline subjected Lopez Prater to several adverse employment actions, including, but not necessarily limited to, failing to renew her contract for the spring 2023 semester, violating its guarantee of academic freedom, publicly denouncing Lopez Prater as "Islamophobic" and her conduct "an act of intolerance," announcing her non-renewal before the end of fall semester classes, and assisting and/or facilitating further public defamation and humiliation of Lopez Prater.

**ANSWER:**  This paragraph sets forth legal conclusions and does not require an

answer. To the extent that an answer is required, Hamline University denies. Hamline University denies the remaining allegations set forth in this paragraph.

79.    Hamline subjected Lopez Prater to the foregoing adverse actions because she is not Muslim, because she did not conform her conduct to the specific beliefs of a Muslim sect, and because she did not conform her conduct to the religion-based preferences of Hamline that images of the Prophet Muhammad not be shown to any Hamline student.

**ANSWER:**   Hamline University denies the allegations set forth in this paragraph.

80.    By its conduct, Hamline violated section 363A.08, subd. 2 of the MHRA.

**ANSWER:**   This paragraph sets forth legal conclusions and does not require an answer. To the extent that an answer is required, Hamline University denies. Hamline University denies the remaining allegations set forth in this paragraph.

81.    As a result of Hamline's unlawful conduct, Lopez Prater has suffered, and will suffer, damages, including but not necessarily limited to loss of income, mental anguish, emotional distress, loss of reputation, and other compensatory damages in excess of $50,000.

**ANSWER:**   Hamline University denies the allegations set forth in this paragraph.

### AFFIRMATIVE DEFENSES

1.    Plaintiff's Complaint fails to state a claim upon which relief may be granted;

2.    Plaintiff's claim may be barred, in whole or in part, by the applicable statute of limitations;

3.    Plaintiff's claim may be barred, in whole or in part, by the doctrines of unclean hands, laches, estoppel, and/or set-off;

4.      Plaintiff's claim for damages may be barred or reduced because she failed to exercise reasonable diligence to secure comparable employment, and thus failed to meet her duty to mitigate her damages;

5.      Defendant's employment actions towards Plaintiff were done in good faith;

6.      Defendant affirmatively asserts it engaged in good faith efforts to comply with the law;

7.      Defendant affirmatively asserts that, even if Plaintiff is able to prove that a prohibited factor motivated Defendant's alleged employment actions, which Defendant expressly denies, the same actions would have been taken even absent such motivation and, therefore, Plaintiff's claim must fail;

8.      Defendant reserves the right to assert additional affirmative defenses that may be appropriate as discovery and/or investigation proceeds.

9.      WHEREFORE, Defendant Trustees of the Hamline University of Minnesota respectfully demand judgment dismissing all claims alleged against it on the merits, with prejudice and with fees, costs, and disbursements and such other relief as the Court deems equitable.

THIS DEFENDANT DEMANDS A JURY TRIAL.

Dated:  September 29, 2023.

**HINSHAW & CULBERTSON LLP**

By:  *s/ Mark T. Berhow*
      Mark T. Berhow, Reg. No. 031450X
      Kevin R. Coan, Reg. No. 29357X
      250 Nicollet Mall, Suite 1150
      Minneapolis, MN 55401
      Telephone: 612-333-3434
      Facsimile: 612-334-8888
      mberhow@hinshawlaw.com
      kcoan@hinshawlaw.com

      ***Attorneys for Defendant Trustees of
      the Hamline University of Minnesota***